In re MARINE POLLUTION SERVICE, INC., t/a Certified Concrete Co., Debtor.

In re TRANSIT MIX CONCRETE CORP., Debtor.

David M. BRODSKY, as Trustee for Marine Pollution Service, Inc., t/a Certified Concrete Co., and Transit Mix Concrete Corp., Plaintiff,

v.

LOCAL 282, INTERNATIONAL BROTHERHOOD of TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN and HELPERS of AMERICA; Certified Concrete Co. Drivers Committee of Local 282; Transit Mix Concrete Corp. Drivers Committee of Local 282; William Michael Meyers; and Thomas A. Knowlton, Esq., Defendants.

Bankruptcy Nos. 87–B–11548 (CB), 87–B–11642 (CB).

88 Civ. 640 (MBM).

United States District Court, S.D. New York.

July 14, 1988.

Matthew J. Gold, Daniel R. Goodman, Schulte Roth & Zabel, New York City, for plaintiff David Brodsky.

Jerold Jacobson, Summit Rovins & Feldesman, New York City, Special Labor Counsel to the Trustee.

Walter M. Meginniss, Jr., Gladstein Reif Meginniss, Brooklyn, N.Y., for debtor Transit Mix.

Stephen Fine, Cohn Glickstein & Lurie, New York City, for defendant Certified Concrete Co.

MUKASEY, District Judge.

This is an appeal pursuant to 28 U.S.C. § 158(a) of a decision by the Bankruptcy Court in this District vacating an arbitration award that would have the effect of permitting drivers for Transit Mix Concrete Corporation ("Transit Mix") to work on projects being supplied by Certified Concrete Company ("Certified"), by combining the seniority lists of drivers for these two debtors. For the reasons set forth below, the decision of the Bankruptcy Court is reversed and the arbitration award is reinstated.

## I. FACTS

### A. *The Parties*

Marine Pollution Service, Inc., transacting business as Certified and Transit Mix produce and distribute ready mix concrete in the New York City area. A major stockholder of both was Edward J. Halloran, convicted in May, 1988 of violating the mail fraud statute, 18 U.S.C. § 1341 and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, in a prosecution in this Court styled *United States v. Salerno*, 86 Cr. 245 (MJL). Halloran owned 90% of Certified through non-voting stock, and 76% of the company that owned Transit Mix. Each company is a

party to an industry-wide collective bargaining agreement with Local 282 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

In August 1987 both companies filed in the Bankruptcy Court for this District separate petitions for reorganization under Chapter 11 of the Bankruptcy Code. Those petitions were later consolidated for administrative purposes only, and on September 9, 1987 David M. Brodsky, Esq. was appointed trustee to administer the estates of both debtors. Neither company has sought to reject its collective bargaining agreement with Local 282.

Concurrent with these events, Certified fared substantially better than Transit Mix, which suspended operations prior to the filing of the petition and has not resumed operations to date. The Transit Mix drivers complained to Local 282 that they had a right under the industry-wide contract to be integrated into the Certified work force and to share the work with the Certified drivers. Local 282 took no position in the dispute between two groups of its members, but instead designated committees of Transit Mix and Certified drivers to advance the interests of each group. Defendant William Michael Meyers is a member of the Transit Mix drivers committee.

### B. *The Collective Bargaining Agreement and the Request to Arbitrate*

The Transit Mix drivers based their asserted rights on section 28 and section 9 of the contract, which provide in relevant part, respectively, that if "the entire operation [of an employer covered by the contract] is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceedings ... the Employees of the Employer affected shall be employed by the successor ...," and that when "the Company is a 'buy-out' the men go to the bottom of the [seniority] list. In a 'merger', the men are to be slotted."

On August 28, 1987, Franklin K. Moss, Esq., counsel to Local 282, wrote to Certified's counsel asking that the dispute be

submitted to an arbitrator under the contract. Hearings were held before the arbitrator, defendant Thomas A. Knowlton, Esq., on September 18 and 30 and October 1, 1987. The trustee appeared through counsel at those hearings, and testified himself to certain factual matters.

The arbitrator's powers under the contract are coextensive with those of a labor-management disputes panel also created under the contract, and are exceptionally broad. Those powers extend to "[a]ny and all complaints, grievances, controversies or disputes between the Union and the Employer in connection with or in relation to this Agreement or concerning the interpretation, application, performance or alleged breach thereof by either of the parties hereto, or by any other party signatory to this industry-wide collective bargaining Agreement or with respect to any term or condition of employment hereunder, which the parties are unable to settle between them, [which] may ... be submitted for arbitration and final determination ...." The arbitrator is empowered to grant relief by way of injunction, damages, or such other relief as he deems appropriate.

## C. *The Arbitrator's Decision*

On October 23, 1987 the arbitrator issued his opinion and award, finding that there had been neither a buy-out nor a merger but directing that the seniority lists of the two companies be merged by alternating the most senior Certified driver with the most senior Transit Mix driver such that an equal number of Certified and Transit Mix drivers would be employed even though strict seniority might dictate employing more drivers from one company than from the other. He stressed that his award should be regarded as temporary, to be revised as the changing fortunes of the companies might require.

The arbitrator's reasoning to reach that result has been attacked in both the Bankruptcy Court and here as without basis in the contract and the product solely of his personal sense of equity. Therefore, it is necessary to review his opinion in some detail.

The arbitrator first reviewed the history of common ownership of the companies, and noted that the trustee had appointed the same person to run both. He then reviewed the contractual language in sections 9 and 28 referred to above, and cited two arbitration decisions involving those provisions before concluding "that there is *no* language in either the contract or in an arbitrator's decision which explicitly states the proper solution of the present controversy." (emphasis in original)

Thereafter, the arbitrator described the positions of the two sides, and then framed the question before him as follows:

> The question is whether the property rights, which are *implicit* in the contractual recognition of seniority, are to be abolished, at least for a measurable period, for even the most senior of the Transit-Mix employees or are to be shared in some proper manner which can only occur by a reduction in the similar rights of the Certified drivers for the same period of time.

He went on to find that the situation before him constituted "neither a 'buy-out' nor a 'merger,'" and that there was "therefore no contractual precedent as a guide," a statement that I read as simply a reiteration of his previously expressed view that the contract contained no language "which *explicitly* states the proper solution of the present controversy." (emphasis added) He then continued to analyze the contract's seniority provisions and found that, "the contractual recognition of 'seniority' creates a very substantial value to the individual bargaining unit members. In this case that value amounts to a complete acceptance of the property rights gained by length of service."

After making that finding the arbitrator proceeded to consider the appropriate remedy, and reasoned that, "Since I believe that I have *carte blanche* in determining the award in this case, I am very reluctant to create any final resolution in what is certainly a fluid situation." He then stated his belief "that there should be some measure of job sharing. I do not consider this in terms of a 'merger' of lists as much as it

is a sharing based on my concern for equity." His award decreed a combined list of drivers from the two companies "commencing with the most senior Certified driver who will be followed by the most senior Transit–Mix driver and continuing to alternate in this fashion until a complete list results therefrom." The award provided no relief other than to establish the order of the drivers on Certified's seniority list. It did not require Certified to employ any particular number of drivers. It also specifically barred claims for back pay.

## D. *The Bankruptcy Court Decision*

The arbitrator's award was to become effective November 16, 1987. On November 13 the trustee secured from the Bankruptcy Court a stay of the award, and on November 16 he filed an adversary proceeding in that court to vacate the award. The two drivers' committees then filed cross-petitions in the same court, the Certified drivers seeking to vacate the award and the Transit Mix drivers seeking to confirm it.

Following a hearing on November 17, the bankruptcy judge granted a preliminary injunction staying the award, but expressed no views on the merits of the dispute other than to say he had serious reservations as to whether the arbitrator "did or did not step outside of the bounds of his powers." He did not make explicit findings with respect to irreparable injury or rule with respect to likelihood of success on the merits. Rather, he reasoned that if he did not grant the preliminary injunction and let the arbitrator's award take effect, but later found the award to have been improper, "that means there will be disruption in the company twice." On the other hand, if he did grant the injunction blocking the award, even if he later upheld the award, "there will only be disruption once." Accordingly, he granted the preliminary injunction.

On December 1, 1987 the bankruptcy judge ruled orally from the bench and granted the trustee's request for a permanent injunction. He held first that the case engaged matters concerning the administration of the debtors' estates and confirmation of a plan of reorganization and thus was a "core proceeding" within 28 U.S.C. § 157(b)(2)(A) and (L).[1]

He then ruled that the arbitrator's decision could not have drawn its essence from the contract for at least three reasons. First, he noted that the August 28, 1987 letter from union counsel to counsel for Certified, which requested the arbitration, invoked the provisions of the contract between Certified and Local 282, notwithstanding that there was no dispute between the Certified drivers and the Company. Therefore, there should have been nothing to arbitrate. Next, he held that if the case had been arbitrated under what he conceived to be the relevant contract—the one between Local 282 and Transit Mix—the arbitrator would simply have stopped and decided nothing further once he determined that there was neither a merger nor a buy-out, apparently because, in the bankruptcy judge's view, the August 28, 1987 letter invoking arbitration seemed to define only a dispute between the Certified drivers and the Transit Mix drivers as to whether "there has been a 'merger' within the meaning of Section 9 of the contract, entitling [the Transit Mix drivers] to be 'slotted' into the Certified seniority list." Finally, he found that the Transit Mix drivers could not be considered third party beneficiaries of the Local 282 contract with Certified because there had been no showing of an intent to make them such. Accordingly, the bankruptcy judge described the arbitrator's award as "a remedy in search of a grievance."

In fashioning such a remedy, the bankruptcy judge continued, the arbitrator not only exceeded his authority but also "invaded the territory intended for the Bankruptcy Court...." He cited four statutes

---

1. 28 U.S.C. § 157(b)(1) permits a bankruptcy judge to "hear and determine ... all core proceedings ... arising in a case under title 11...." Paragraph (b)(2)(A) of the same section defines core proceedings to include "matters concerning the administration of the estate," paragraph (b)(2)(L) includes "confirmation of plans."

as marking the boundaries of the invaded territory: 28 U.S.C. § 1334 (relating to abstention by federal courts in certain Chapter 11 cases but retaining the full reach of the automatic stay provided in 11 U.S.C. § 362); 28 U.S.C. § 157 (granting to bankruptcy courts jurisdiction to decide core proceedings); 11 U.S.C. § 1113 (restricting debtors' rights to reject labor contracts) and 11 U.S.C. § 1123 (specifying the contents of a reorganization plan including, *inter alia,* "consolidation of the debtor with one or more persons").

He added that when Congress enacted 28 U.S.C. § 157 it "intended that all administration of a case could be done by a Bankruptcy Judge," and that the arbitrator had frustrated that intent by taking "the first step towards procedural consolidation." He perceived two administrative difficulties in the bankruptcy arising from the arbitrator's award. First, when the debtors had to reject or assume the collective bargaining agreements under 11 U.S.C. § 1113, "there will be a problem as to which contract the Trustee may reject or assume. Will it be the separate contracts of the two distinct entities? Or would it be the hybrid that Mr. [Knowlton] has developed ...?" Second, the arbitrator's reservation of the right to amend his award to suit future changes in circumstance upon renewed application by the parties, "affects the smooth administration of this case." The nature of this administrative difficulty was not further spelled out.

## II. DISCUSSION

### A. *The Arbitrator's Decision and the Collective Bargaining Agreement*

It is well and long established that federal courts should give substantial deference to arbitral decisions rendered pursuant to collective bargaining agreements. That policy, established in what has come to be known as the Steelworkers Trilogy,[2] was summarized and reiterated by the Supreme Court only last term as follows:

2. *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960);

The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. 'The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.' *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate. *Id.,* at 597, 80 S.Ct., at 1361.

*United Paperworkers Int'l Union v. Misco, Inc.,* — U.S. —, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).

■ By that standard, the Bankruptcy Court's conclusion that the arbitrator's decision failed to draw its essence from the Certified–Local 282 agreement cannot stand.

The arbitrator did not formulate his award until he had first examined the "Seniority" (section 9) and "Successors" (section 28) clauses of the contract and found that they created property rights in seniority of employees not in Certified's employ. The arbitrator concluded, apparently based in part on prior common ownership of Certified and Transit Mix and a current common operating supervisor under the trusteeship, that Transit Mix employees were among those who had such rights. These were not unreasonable conclusions, particularly when one considers that the collective bargaining agreement was between Certified and Local 282, which represents the drivers employed by both companies, not between Certified and only those union members who were its drivers.

*Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

■ It was only after the arbitrator had decided based on the contract that such rights existed, and that the Transit Mix employees could assert them, that he formulated the question of whether those rights, "implicit in the contractual recognition of seniority, are to be abolished, at least for a measurable period, for even the most senior of the Transit-Mix employees or are to be shared in some proper manner...." That question, however, involved only the *remedy* to be imposed, as to which the arbitrator concluded he had *"carte blanche,"* a phrase seized on by both appellees and the Bankruptcy Court to suggest that the arbitrator's decision did not draw its essence from the contract but instead represented his own brand of industrial justice. I disagree. That description of his powers is amply supported by the contract itself, which contains a broad arbitration clause empowering the arbitrator to hear "[a]ny and all ... disputes between the Union and the Employer in connection with or in relation to this Agreement or concerning the interpretation, [or] application ... thereof ... or with respect to any term or condition of employment hereunder," and permits him to "grant mandatory and injunctive relief, damages, and such other relief as ... [the arbitrator] deems appropriate." That clause was sufficiently broad to permit him to deal with the dispute here in the manner he did. *See Transit Mix Concrete Corp. v. Local Union No. 282,* 809 F.2d 963, 968 (2d Cir.1987).

■ Nor was the arbitrator limited by the contract or otherwise to determining whether there was a "buy-out" or a "merger" and then imposing the result prescribed for one or the other. The plain sense of the August 28, 1987 letter from Local 282's counsel invoking arbitration was that the underlying dispute would be submitted for "a determination by an impartial arbitrator with respect to this matter," that is, a determination of the entire matter. I do not think it reasonable to read that letter to suggest that the arbitrator would be limited to deciding whether or not the contention of the Transit Mix drivers—that there had been a "merger" and that they were therefore entitled to be "slotted"—was ac-

curate. Even if that narrow reading were reasonable, I would be bound to resolve any doubts about the scope of the submission to the arbitrator in favor of coverage. *Kurt Orban Co. v. Angeles Metal Systems,* 573 F.2d 739 (2d Cir.1978).

■ Nor is it accurate to suggest that such a submission to the arbitrator violated the automatic stay provisions of 11 U.S.C. § 362. The claim in question arose after commencement of the Chapter 11 proceedings and involved no attempt either to obtain any of the debtor's property or to create or enforce any lien against the debtor's property. There is no dispute that under the collective bargaining agreement all drivers are paid at the same rate. Thus the arbitrator's award could not result in any increased wage burden on the estate inasmuch as it does not require that any particular number of drivers be employed. Again, the award has nothing to do with how much will be paid in wages, only with who will receive those wages. Therefore, no interest protected by 11 U.S.C. § 362(a)(1), (2) or (3) has been threatened.

■ The Second Circuit's holding in *Truck Drivers Local Union No. 807 v. Bohack Corp.,* 541 F.2d 312, 320 (2d Cir. 1976), *cert. denied,* 439 U.S. 825, 99 S.Ct. 95, 58 L.Ed.2d 117 (1978), that after the filing of a Chapter 11 petition "the party seeking to arbitrate under a collective bargaining agreement must seek and receive authorization of the bankruptcy court," on which appellees rely, is not applicable here. As appellants cogently argue, that holding and others of similar import do not survive the enactment in 1984 of 11 U.S.C. § 1113, which prescribes the procedure a Chapter 11 trustee must follow if he wishes to reject a collective bargaining agreement, including an attempt to negotiate with the union and a hearing on available alternatives. That section was drafted to undo the Supreme Court's holding in *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 532, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984), that after the filing of a bankruptcy petition "the collective-bargaining agreement is not an enforceable contract within the meaning

of NLRA § 8(d)." *In re Century Brass Products, Inc.*, 795 F.2d 265, 266–67, 271–73 (2d Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 433, 93 L.Ed.2d 383 (1986). It would be anomalous to find that Congress enacted a mandatory procedure for rejecting a collective bargaining agreement without which the agreement stays in full force and effect, and then to hold that a previously enacted section of the same statute—11 U.S.C. § 362, providing for a stay of claims against a debtor's estate—automatically invalidates the arbitration clause of a collective bargaining agreement, particularly when, as noted above, we are not dealing with an arbitration that runs afoul of any provision of 11 U.S.C. § 362 even without considering the enactment of § 1113.

### B. *The Arbitrator's Decision and the Bankruptcy Court's Jurisdiction*

The Bankruptcy Court cited four statutes in determining that the arbitrator had "invaded the territory intended for the Bankruptcy Court." One was 28 U.S.C. § 1334, which deals with abstention by federal courts in certain Chapter 11 cases, but preserves intact the automatic stay provisions of 11 U.S.C. § 362. Inasmuch as I have already determined that the award did not implicate any interest protected by the automatic stay provisions, it follows that there can have been no invasion in that respect. .

■ Another was 11 U.S.C. § 1113, which specifies the procedure to be used by a trustee who wishes to reject a collective bargaining agreement. Here it was suggested that the arbitrator had "raised complex issues for the future when this Debtor, that's the Certified Debtor or the Transit Mix Debtor at some time in the future will have to address [11 U.S.C. §] 1113, and there will be a problem as to which contract the Trustee may reject or assume." Yet there is simply no such problem. The arbitrator never found that Certified was bound by any except its own contract with

Local 282, which the trustee is as free to reject after the arbitration as he was before—provided he complies with the procedures prescribed in the statute. He is equally free to reject the Transit Mix–Local 282 agreement, with the same proviso.

■ The Bankruptcy Court cited also 11 U.S.C. § 1123, which prescribes the content of reorganization plans, including possible "merger or consolidation of the debtor with one or more persons." 11 U.S.C. § 1123(a)(5)(C). Yet there is nothing in the arbitrator's award that accomplishes or promotes such a substantive consolidation. 5 Collier on Bankruptcy ¶ 1100.06 (15th ed. 1986). Again, as noted above, the award has no impact on the assets or liabilities of either debtor because it deals only with who will receive wages that will be paid in any event, not with how much will be paid.[3]

■ Finally, the Bankruptcy Court suggested also that there had been an infringement of its power in violation of 28 U.S.C. § 157, specifically paragraphs (b)(2)(A) and (L) of that section, which permit bankruptcy courts to hear and determine "core proceedings" including "matters concerning the administration of the estate," and "confirmations of plans." Here the Bankruptcy Court appears to be suggesting not simply that its review of the award is a core proceeding, of which more later, but that the award itself had an impact on the Bankruptcy Court's right or ability to conduct such a proceeding. I perceive no such impact, nor has any been suggested by the appellees. Neither do I see how the arbitrator's award affects the Bankruptcy Court's authority to confirm a plan of reorganization.

### C. *The Core Status of the Bankruptcy Court Proceeding*

As I hope the above discussion makes clear, I have found incorrect as a matter of law the Bankruptcy Court's holding that the arbitrator's decision did not derive its essence from the collective bargaining

---

**3.** To the extent the Bankruptcy Court expressed concern that the arbitrator "basically took the first step towards procedural consolidation," that concern seems misplaced for at least two reasons: First, the award has no impact on how the bankruptcy proceeding will be administered. Second, that step, governed by Bankruptcy Rule 1015(b) and involving simply the joint administration of related debtors, had already been taken by the Bankruptcy Court itself.

agreement, that it exceeded his jurisdiction, that it violated the automatic stay provisions of the Bankruptcy Code, and that it invaded the jurisdiction of that Court. Because the Bankruptcy Court's legal conclusions are subject to plenary review here, *Truck Drivers Local 807 v. Carey Transp., Inc.*, 816 F.2d 82, 88 (2d Cir.1987), that finding suffices to warrant reversal. Thus there would seem to be no reason to examine whether the Bankruptcy Court proceeding was a "core proceeding" within the meaning of 28 U.S.C. § 157, which the Bankruptcy Court was empowered by that section to "hear and determine," or whether it was merely a proceeding "related to a case under title 11," in which event the Bankruptcy Court was empowered only to hear it and submit to this Court proposed findings of fact and conclusions of law. *Id.* at (c)(1).

However, should the trustee or another appellee seek appellate review of this decision and should it be determined in the course of that review that the Bankruptcy Court's decision rested upon a factual determination, whether or not this was a core proceeding could become relevant.

The statutory concept of a "core proceeding" originated in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 93 L.Ed.2d 598 (1982), where the Supreme Court held unconstitutional the Bankruptcy Reform Act of 1978 insofar as it granted to bankruptcy courts established by Congress under its Article I powers the jurisdiction to decide cases, including the contract dispute there at issue, calling for the exercise of Article III judicial power. The plurality opinion made it plain, however, that the Court was not challenging the authority of bankruptcy courts to deal with "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power...." *Id.* at 71, 102 S.Ct. at 2871.

In response, Congress enacted 28 U.S.C. § 157 to replace the unconstitutional grant of jurisdiction. In that section it empowered bankruptcy courts to decide actions under title 11 and all core proceedings "arising under title 11, or arising in a case under title 11." Such cases must either "involve a cause of action created or deter-

mined by a statutory provision of title 11," *Matter of Wood*, 825 F.2d 90, 96 (5th Cir. 1987), or must refer to administrative matters "that arise *only* in bankruptcy cases." *Id.* at 97 (emphasis in original). It is by that standard that one must read the broad language of § 157(b)(2)(A), "matters concerning the administration of the estate," and the language of § 157(b)(2)(L), "confirmations of plans," cited by the Bankruptcy Court. If one were to read that language to include as a "core proceeding" any proceeding that could have any speculative or tangential effect on either the administration of the bankruptcy proceeding or the confirmation of a reorganization plan, such as by requiring the trustee to devote his attention to some aspect of the proceeding and thereby divert him from his attention to administration or confirmation of a plan, that would sweep within the jurisdiction of bankruptcy courts precisely the cases the Supreme Court held in *Marathon Pipe Line* could be decided only by Article III courts.

■ Rather, than speculative or tangential effect, the touchstone would seem to be whether the case has a "life of its own in either state or federal common law or statute independent of the federal bankruptcy laws." *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir.1983) (discussing the Emergency Bankruptcy Rules adopted after *Marathon Pipe Line* to fill the gap until the enactment of 28 U.S.C. § 157). If it does, it is not a "core proceeding"; if it does not, it is.

■ The proceeding before the Bankruptcy Court was simply one to confirm or vacate a labor arbitration. Such an action may be brought routinely by a labor organization or by an employer under 29 U.S.C. § 185; it has a very active "life of its own" outside the federal bankruptcy laws. Therefore, it was not a "core proceeding" within 28 U.S.C. § 157.

## III. CONCLUSION

The decision of the Bankruptcy Court is reversed and the award of the arbitrator is reinstated.

SO ORDERED.