Earl D. CROWELL, et al., Respondents,

v.

**DELAFIELD FARMERS MUTUAL
FIRE INSURANCE COMPANY,**
Petitioner, Appellant.

No. C2–89–1873.

Supreme Court of Minnesota.

Nov. 30, 1990.

Donald Rysavy, Steven J. Hovey, Austin, for appellant.

James Malters, Worthington, for respondents.

YETKA, Justice.

The plaintiffs, Earl and Vonette Crowell, brought an action for declaratory relief against Delafield Farmers Mutual Fire Insurance Company (hereinafter "Delafield") after it refused to pay the Crowells for the loss of a farmhouse destroyed by fire. Delafield claimed that the Crowells had no insurable interest in the property at the time of the fire.

Both parties brought motions for summary judgment. The trial court ruled that the Crowells had an insurable interest in the property. A trial on the issue of damages was held on July 28, 1989, and an order for judgment against Delafield for $38,009.27 was issued on August 24, 1989. Judgment was entered on September 25, 1989. Delafield appealed to the Minnesota Court of Appeals, which affirmed the trial court's decision. *Crowell v. Delafield Farmers Mut. Ins. Co.*, 453 N.W.2d 724 (1990). We affirm both courts.

Earl and Vonette Crowell owned a piece of farmland with a farmhouse located thereon in Cottonwood County, Minnesota.[1] They lived in the farmhouse since 1970 when they bought it from Earl Crowell's

1. The documents disagree as to whether the Crowell farm is in Jackson or Cottonwood County, but the legal description places the property in Cottonwood County.

parents. The farm has been in the Crowell family for 50 years.

On October 7, 1980, the Crowells took a mortgage on the property with the Federal Land Bank of St. Paul (hereinafter "the bank"). In compliance with the terms of the mortgage, the Crowells took out a fire insurance policy on the house with Delafield. There was no mortgage clause in the policy, and the Crowells, not the bank, paid premiums on the policy.

On September 12, 1986, the Crowells defaulted on the mortgage. The bank commenced foreclosure proceedings, and the statutory period of redemption expired on November 25, 1987. The Crowells remained on the property while they attempted to get financing in order to exercise their statutory right of first refusal under Minn.Stat. § 500.24, subd. 6 (1990) and 12 U.S.C. § 2219a (1989). It was the usual practice of the bank to permit a farmer to remain on the farm if there was no third-party offer to purchase or rent.

A fire destroyed the farmhouse November 27, 1987, while the Crowells' insurance policy was in effect.[2] The Crowells submitted a claim to Delafield, which denied the claim on the grounds that the Crowells had no insurable interest in the property.

In February 1988, a third party offered the bank $153,000 for the Crowell property. The Crowells exercised their right of first refusal and repurchased the property for $153,000.

### ISSUE

Does the right of a first refusal granted pursuant to Minn.Stat. § 500.24, subd. 6 and 12 U.S.C. § 2219a constitute a sufficient interest to establish in its holder an insurable interest in the real property?

Summary judgment is appropriate where there is no genuine issue of material fact and either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. In the case at bar, neither party disputes the trial court's and court of appeals' ruling that there are no issues of material fact.

Delafield challenges both courts' application of law to the facts. This court thus must determine whether the trial court erred in its application of the law. *Minneapolis, St. Paul & Sault Ste. Marie R.R. Co. v. St. Paul Mercury Indemn. Co.*, 268 Minn. 390, 406, 129 N.W.2d 777, 788 (1964).

■ Without question, a mortgagor has an insurable interest throughout the statutory period of redemption. Minnesota Statutes section 580.12 (1990) provides that, after foreclosure on a mortgage and sale of the property, title remains vested in the mortgagor until the expiration of the redemption period. A mortgagor who holds title has an insurable interest. *Fuller v. Mohawk Fire Ins. Co.*, 187 Minn. 447, 450, 245 N.W. 617, 618 (1932) (registered fee owner who had possession of property held to have insurable interest although mortgage lien existed). This court is asked to decide whether, after the expiration of the period of redemption, the Crowells held an estate substantial enough to constitute an insurable interest.

■ Minnesota Statutes section 500.24, subdivision 6 and 12 U.S.C. § 2219a provide that, in the case of farms that have been acquired by enforcing a debt, the creditor agency or corporation may not sell or lease the property to a third party without first giving notice to the former owner and permitting that owner to meet the third party's offer. The Crowells maintain that the right of first refusal is a sufficient interest in the property to be insurable.

In order for an individual to have an insurable interest in property:

> The authorities all agree that it is not necessary that the insured should have an absolute right of property, and that he has an insurable interest if, by the destruction of the property, he will suffer a loss, whether he has or has not any title to, lien upon, or possession of the property itself.

*Banner Laundry Co. v. Great Eastern Casualty Co.*, 148 Minn. 29, 34, 180 N.W. 997, 999 (1921). *See also* 4 Appleman, *Insurance Law and Practice* § 2123 (1969).

---

2. At oral argument, the parties agreed that the policy period did not expire until October 1988.

"[A]ny limited or qualified interest, whether legal or equitable, or any expectancy of advantage, is sufficient" to constitute an insurable interest. *Id.*

Minnesota courts apply the pecuniary loss test. *See Nathan v. St. Paul Mut. Ins. Co.*, 243 Minn. 430, 440, 68 N.W.2d 385, 392 (1955) (insurable interest exists if insured will suffer loss regardless of title, lien, or possession). The pecuniary-loss test is the predominant test in other jurisdictions as well; *see* 4 Appleman, *supra*, at § 2123 and cases cited therein.

Someone sustained a loss with the destruction of the farmhouse. Obviously, it had some value. The parties agree that the loss was $38,009.27, the actual cost of repairing the building. The Crowells did repair the building.

The Crowells point out that, before the fire destroyed their home, they lived rent-free on the farm they worked. After the fire, they incurred the expenses of renting a house elsewhere and traveling to and from the farm until the farmhouse was repaired.

Delafield agrees that the pecuniary-loss test applies, but it argues that a right of first refusal is an option to repurchase, but not an obligation. Therefore, only a potential pecuniary loss exists.

Delafield acknowledges that, when a person has a reasonable prospect of becoming the owner of property, takes out fire insurance, acquires an insurable interest, and then suffers a loss, the insurance policy is binding, citing *Antell v. Pearl Assurance Co.*, 252 Minn. 118, 89 N.W.2d 726 (1958), for the rule. Delafield distinguishes the situation in *Antell* from that of the Crowells. The insured in *Antell* had an insurable interest because he had a contract to purchase the house and had paid one-third of the purchase price; the Crowells did not exercise their option to repurchase until after the fire.

There are factual similarities between *Antell* and this case, however. The Crowells entered into the insurance contract in 1985. They, not the bank, paid premiums. At the same time, the Crowells made mortgage payments on the house and farm. Like the insured in *Antell*, the Crowells already had made a substantial financial investment in the property at the time fire destroyed the house even though they had not yet exercised their right of first refusal.

The Crowells characterize the right of first refusal as an option. Delafield similarly describes the statute granting the right as a "contract" the legislature has imposed on lenders. As an option contract, the right of first refusal carries with it certain enforceable property rights.[3]

The legislature, when it passed the statute in 1986, intended to grant farmers a substantial right. The right of first refusal was enacted in response to a worsening farm crisis. Subdivision 6 was part of chapter 398, which was a package of programs to help save the family farm.[4] The legislature made findings that "there is a rural economic emergency resulting from the agricultural economic depression.

---

3. *See* numerous cases collected in Annotation, *Lessee's First Privilege Option to Purchase or Terms of Similar Import as Requiring Existence of Prior Offer from Third Party*, 76 A.L.R.3d 1139 (1977); Annotation, *Landlord and Tenant: What Amounts to "Sale" of Property for Purposes of Provision Giving Tenant Right of First Refusal If Landlord Desires to Sell*, 70 A.L.R.3d 203 (1976); Annotation, *Tenant's Right to Damages for Landlord's Breach of Tenant's Option to Purchase*, 17 A.L.R.3d 976 (1968); Annotation, *Rights of Holder of "First Refusal" Option on Real Property in Event of Sale at Foreclosure or Other Involuntary Sale*, 17 A.L.R.3d 962 (1968); Annotation, *Validity of Option to Purchase Realty as Affected by Indefiniteness of Term Provided for Exercise*, 31 A.L.R.3d 522 (1970); Annotation, *Option to Purchase at Price Offered to Optionor by Third Person*, 136 A.L.R. 138 (1942).

4. Chapter 398 provided for mandatory mediation between debtor and creditor after default on a debt secured by agricultural property. Act of Mar. 21, 1986, ch. 398, art. 1, 1986 Minn.Laws 407 (codified at Minn.Stat. § 583.26 (1990)). It established a family farm legal assistance program. Act of Mar. 21, 1986, ch. 398, art. 3, 1986 Minn.Laws 415–18 (codified at Minn.Stat. § 480.250 (1990)).

It approved an interstate compact on agricultural grain marketing whose purpose was "to protect, preserve, and enhance * * * the economies and very existence of local communities * * * dependent upon the production and sale of agricultural grains." Act of Mar. 21, 1986, ch. 398, art. 4, 1986 Minn.Laws 418–22 (codified at Minn.Stat. § 236A.01 (1990)).

It established the Minnesota Rural Finance Administration whose purpose was to make

Foreclosure sales and subsequent deficiency judgments are debilitating the people foreclosed." 1986 Minn.Laws ch. 398, art. 19.

It found further that "[t]housands of this state's farmers are unable to meet current payments of interest and principal payable on mortgages and other loan and land contracts and are threatened with the loss of their farmland, equipment, crops, and livestock through mortgage and lien foreclosures." 1986 Minn.Laws ch. 398, art. 1, § 6.

The farm emergency of the 1980's is reminiscent of that in the 1930's when the legislature passed the Minnesota Mortgage Moratorium Act, Act of Apr. 18, 1933, ch. 339, 1933 Minn.Laws 514.[5] The preamble to the 1933 act set forth the extent of the crisis:

> Whereas, the severe financial and economic depression * * * has resulted in extremely low prices for the products of the farms and the factories, a great amount of unemployment, an almost complete lack of credit for farmers * * * the Legislature of Minnesota hereby declares its belief, that the conditions existing * * * have created an emergency of such a nature that justifies and validates changes in legislation providing for the temporary * * * conditions upon which mortgage foreclosure sales may be had or postponed * * *.

*Id.* at 514–15.

The right of first refusal was enacted in 1986 as additional protection for farmers beyond those safeguards provided by the moratorium on mortgage foreclosure enacted in 1983. The legislative findings of the 1983 act drew a parallel between the crisis farmers faced in 1933 and that of the 1980's:

> The legislature finds that the number of unemployed persons in this state has reached the highest level since the Depression of the 1930's; that farm commodity prices are below the break-even point for the cost of production * * *. The legislature further finds that these conditions have resulted in an emergency * * *.

Act of May 23, 1983, ch. 215, § 4, 1983 Minn.Laws 654, 654–55 (codified at Minn. Stat. § 583.01 (1988), repealed, 1989 ch. 350, art. 16, § 6, replaced by Minn.Stat. § 583.21 (1990)).

The right of first refusal was incorporated into Minn.Stat. § 500.24 whose stated purpose is "to encourage and protect the family farm as a basic economic unit, to insure it as the most socially desirable mode of agricultural production, and to enhance and promote the stability and well-being of rural society in Minnesota and the nuclear family." Minn.Stat. § 500.24, subd. 1 (1990).

The legislature intended to grant a significant property right to farm families. The Crowells are within the class of persons the legislature meant to protect.

The right of first refusal, together with permissive use of the property, is a property right of some significance. Both parties characterize it as an option contract. It is sufficient to qualify as an insurable interest when coupled with direct pecuniary loss according to the *Banner Laundry* test.

Both the trial court and the court of appeals are affirmed.

---

credit available to farmers and to permit them to restructure existing debt. Act of Mar. 21, 1986, ch. 398, art. 6, 1986 Minn.Laws 423–42 (codified at Minn.Stat. § 41B.01 (1990)).

It also granted a family farm security interest exclusion (ch. 398, art. 8), reactivated the agricultural data tax force (ch. 398, art. 11), protected farmers' crop rights on foreclosed land (ch. 398, art. 12), restricted deficiency judgments against mortgagors whose agricultural land had been foreclosed (ch. 398, art. 19), established a training program to help farmers with farm management (ch. 398, art. 23), and reduced the effective interest rate for farmers (ch. 398, art. 23).

**5.** The Minnesota Supreme Court found the moratorium constitutional in *Blaisdell v. Home Building & Loan Ass'n*, 189 Minn. 422, 249 N.W. 334 (1933). The United States Supreme Court affirmed in a landmark opinion, *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1933).