In re Roger C. SOLBERG and Catherine E. Solberg, Debtors.

FARM CREDIT BANK OF ST. PAUL, formerly d/b/a The Federal Land Bank of Saint Paul, Plaintiff,

v.

Mark C. HALVERSON, Trustee and Roger C. Solberg and Catherine E. Solberg, Defendants.

Bankruptcy No. 3–88–3401.
Adv. No. 3–89–151.

United States Bankruptcy Court, D. Minnesota, Third Division.

April 11, 1991.

are designated general partners of the reorganized Debtor. Mony is designated as the limited partner.

Gary Koch, Gislason, Dosland, Hunter & Malecki, New Ulm, Minn., for plaintiff.

Thomas P. Melloy, Hall, Byers, Hanson, Steil & Weinberger, P.A., St. Cloud, Minn., for defendants Roger C. Solberg and Catherine E. Solberg.

Obert Knutson, Southern Minnesota Regional Legal Services, Mankato, Minn., for defendants Solberg (of counsel).

Mark C. Halverson, Mankato, Minn., for defendant trustee.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR DECLARATORY JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding for declaratory relief came on before the Court on January 10, 1990, for oral argument upon stipulated facts. Plaintiff appeared by its attorney, Gary W. Koch. Defendant Mark C. Halverson ("the Trustee") appeared for the bankruptcy estate. Defendants Roger C. Solberg and Catherine E. Solberg ("Debtors") appeared via a brief filed by Thomas P. Melloy, their attorney (Obert Knutson, Minnesota Family Farm Law Project, Southern Minnesota Regional Legal Services, of counsel[1]). Upon the stipulated facts and the briefs and arguments of counsel, the Court makes the following order.

### FINDINGS OF FACT

1. Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 26, 1988. The Trustee is the duly qualified and acting trustee of their bankruptcy estate.

2. Plaintiff is an instrumentality which operates under the authority of the Farm Credit Act of 1971, as amended. Plaintiff is in the business of lending money for farming and farm-related operations, and

---

1. Rudy Perpich, Governor of the State of Minnesota, had designated January 10, 1990, as "Obert 'Obie' Knutson Day," in recognition of Mr. Knutson's substantial past efforts as a legal services attorney on behalf of financially-distressed farm families and other low-income residents of Southwestern Minnesota. Tragically, Mr. Knutson died in a snowmobiling accident on Lake Washington in LeSueur County on January 13, 1990, cutting short a career marked by dedication and high-quality advocacy. The Court salutes his contributions to the legal system, and honors his memory.

takes real and personal-property security for its loans. It markets and sells property acquired by it through foreclosure of its mortgages and security interests. Under a recent reorganization of the regional Farm Credit system, Plaintiff is the successor-in-interest of The Federal Land Bank of Saint Paul.

3. On September 24, 1975, Debtors granted a mortgage to FLB on a half-quarter section of real estate in Waseca County, Minnesota, which they owned in fee. Debtors granted this mortgage to secure a debt to FLB in the original principal amount of $99,000.00; that debt was evidenced by Debtors' September 24, 1975 promissory note in favor of FLB.

4. On May 1, 1979, Debtors granted a mortgage to FLB on another tract, a quarter-section of Waseca County real estate which they also owned in fee. Debtors granted this mortgage to secure a debt to FLB in the original principal amount of $150,000.00; that debt was evidenced by Debtors' May 1, 1979 promissory note in favor of FLB.

5. Both of these mortgages were duly recorded in the office of the Waseca County Recorder.

6. At some point in 1986–7, Debtors defaulted in their payment obligations under the promissory notes.

7. In enforcement of its rights under the promissory notes and mortgages, Plaintiff foreclosed both mortgages by advertisement pursuant to MINN.STAT. c. 580. Pursuant to proper notice, it sold both tracts at a sheriff's foreclosure sale on October 27, 1987. Plaintiff was the successful bidder, and purchased both tracts subject to Debtors' 12–month statutory right of redemption under MINN.STAT. § 580.23 subd. 2.

8. Debtors did not claim an exemption for either tract during their bankruptcy case, whether in their initial Schedule B–4 or via a later amendment.

9. Neither Debtors nor their Chapter 7 Trustee took action to redeem either tract from Plaintiff's foreclosure.

10. Debtors have not retained physical possession of either tract; nor have they ever reaffirmed their pre-petition debt to Plaintiff.

11. On February 14, 1989, the Court entered an order in BKY 3–88–3401, granting Debtors a discharge under Chapter 7.

12. When this adversary proceeding was commenced, Plaintiff was preparing to market both tracts via public auction; in connection with the marketing, it undertook to clear title to both tracts.

13. Debtors have never made any statement or taken any action which evidences a waiver of their "rights of first refusal" under 12 U.S.C. § 2219a(b) or MINN.STAT. § 500.24.

## CONCLUSIONS OF LAW

### I. Jurisdiction.

This is an adversary proceeding to obtain declaratory relief as to the validity, priority, or extent of Plaintiff's, Debtors', and the bankruptcy estate's relative interests in certain statutory rights which arise out of the pre-petition legal relationship between Debtors and Plaintiff. The according of declaratory relief in the federal courts is generally authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201(a).[2] In the context of Debtors' bankruptcy case, this matter is properly litigated via adversary proceeding. BANK.R. 7001(9) and (2). A judgment in the Trustee's favor would recognize enhanced property rights in the bankruptcy estate, and would result in the garnering of more value for the benefit of Debtors' creditors. Thus, as a "matter concerning the administration of the estate" and a "proceeding affecting the liqui-

---

**2.** In pertinent part, 28 U.S.C. § 2201(a) provides:

In the case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal rela-

tions of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

dation of the assets of the estate," this is a core proceeding. 28 U.S.C. §§ 157(b)(2)(A) and (O). The federal courts have jurisdiction over this dispute, 28 U.S.C. § 1334(b), and it is before the Bankruptcy Court under reference from the District Court, 28 U.S.C. § 157(a) and LOC.R.BANKR.P. (D.Minn.) 103(b). This Court has full authority to enter final judgment in this adversary proceeding. 28 U.S.C. § 157(b)(1).

## II. Merits.

### A. The Issue, Generally.

Federal and Minnesota state legislation enacted in the mid–1980s gives farmer-borrowers certain "rights of first refusal" which they may exercise when their lenders have foreclosed mortgages against their farmland. Prior to their bankruptcy filing, Debtors and Plaintiff were in legal relationships which would have granted these statutory rights to Debtors, at some point. In this adversary proceeding, all three parties seek a declaration of the status of Debtors' and the bankruptcy estate's competing claims to the rights of first refusal, and a declaration of the procedures which Plaintiff was required to use to accord these rights to Debtors and/or the bankruptcy estate before disposing of the tracts after Debtors' bankruptcy filing. They frame three major issues which are appropriate for adjudication.

### B. 12 U.S.C. § 2219a: Federal–Law Right of First Refusal.

In response to the "agricultural credit crisis" of the mid–1980s, Congress passed the Agricultural Credit Act of 1987, Pub.L. No. 100–233. The Act extensively revised various provisions of the United States Code relating to the farmer-owned cooperative Farm Credit System ("FCS"[3]). In general, the Act was intended "to help keep farmers on the land and help turn around the condition of stressed System institutions." H.R.REP. No. 295(I), 100th Cong., 1st Sess. 52 (1987), U.S.Code Cong. & Admin.News, 1987, p. 2723. As part of this effort, the Act substantially amended 12 U.S.C. § 2219a, to create a "right of first refusal"[4] in favor of farmers who

---

**3.** FCS is structured and regulated under federal statute, 12 U.S.C. §§ 2001 *et seq.* It exists to "improve[e] the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit and closely related services to them, their cooperatives, and to selected farm-related businesses ..." 12 U.S.C. § 2001(a). It is comprised of several different levels of participant financial institutions, all of them chartered and regulated by the Farm Credit Administration. 12 U.S.C. § 2002(a). Since the effective date of the Agricultural Credit Act of 1987, many of FCS's participant institutions have undergone statutorily-mandated mergers, 12 U.S.C. § 2011(a), or internal restructurings. Any subsequent use of the term "FCS" will be a generic reference either to the system generally, or to one of its participant institutions, as may appear from context. "Plaintiff" will signify the Farm Credit Bank of St. Paul, as a specific entity.

**4.** Those provisions of 12 U.S.C. § 2219a which establish the "basic" right of first refusal for FCS's sale of foreclosed farm real estate are:

**(a) General rule**
Agricultural real estate that is acquired by an institution of the [Farm Credit] System as a result of a loan foreclosure or a voluntary conveyance by a borrower (hereinafter in this section referred to as the "previous owner") who, as determined by the institution, does not have the financial resources to avoid foreclosure (hereinafter in this section referred to

as "acquired real estate") shall be subject to the right of first refusal of the previous owner to repurchase or lease the property, as provided in this section.

**(b) Application of right of first refusal to sale of property**
(1) Election to sell and notification within 15 days after an institution of the System first elects to sell acquired real estate, or any portion of such real estate, the institution shall notify the previous owner by certified mail of the owner's right—

(A) to purchase the property at the appraised fair market value of the property, as established by an accredited appraiser; or

(B) to offer to purchase the property at a price less than the appraised value.

(2) Eligibility to purchase
To be eligible to purchase the property under paragraph (1), the previous owner must, within 30 days after receiving the notice required by such paragraph, submit an offer to purchase the property.

(3) Mandatory sale
An institution of the System receiving an offer from the previous owner to purchase the property at the appraised value shall, within 15 days after the receipt of such offer, accept such offer and sell the property to the previous owner.

(4) Permissive sale
An institution of the System receiving an offer from the previous owner to purchase the

have borrowed money from FCS, and have pledged farmland to FCS as security for such loans. This right affords such farmer-borrowers an additional opportunity to regain or retain their lands after the completion of foreclosure proceedings by FCS. Congress created these rights "to give ... farm borrowers under financial stress a fair opportunity to overcome their credit problems without adversely affecting creditor rights." *Id.* The parties seek declarations of their respective rights under this statutory provision, as those rights lie in the context of Debtors' bankruptcy case.

### 1. Who Held or Succeeded to the Federal–Law Right of First Refusal, After Debtors Filed for Bankruptcy?

■ As their first question, the parties request the Court to identify the party which held or succeeded to the federal-law right of first refusal, once Debtors filed for bankruptcy. The contest, of course, is between Debtors and the bankruptcy estate. 12 U.S.C. § 2219a(b) grants the farmer-borrower "an absolute right to buy the property [he has lost to FCS through foreclosure] at the appraised fair market value and an alternative right to buy the property at whatever lower price and on whatever terms [FCS] is willing to sell the property to a third party." *Leckband v. Naylor,* 715 F.Supp. 1451, 1453 (D.Minn.1988). The party exercising the right, however, must act within 30 days of receiving FCS's notice of its election to sell. 12 U.S.C. § 2219a(b)(2). The Trustee acknowledges that the answer may not have great finan-

cial consequence to this estate or to any other single bankruptcy estate, given such circumstances as the short lifespan of the federal right; the right's limited or negligible utility to anyone other than working farmers; the lack of a ready market for such rights; and the likelihood that a trustee holding such rights would not be able to induce a competing prospective purchaser to buy the rights from the estate, rather than to augment the amount of its bid to FCB by an amount equivalent to the estate's requested price for the rights.

However, the outcome is of obvious interest to FCS, as a party which must afford the opportunity to exercise the right before it can clear title to real estate which it holds after foreclosure.[5] The outcome may affect the post-bankruptcy business options of financially-distressed farmers in Chapter 7, at least in certain circumstances. Finally, the current unsettled status of these rights creates general uncertainty in the status of title to acquired real estate previously owned by debtors in bankruptcy, both during and after FCS's final disposition of it. Despite its limited financial consequence in the context of any given bankruptcy case, then, the issue is appropriately presented for decision.

As a general proposition, upon the filing of a bankruptcy petition "all legal or equitable interests of the debtor in property *as of the commencement of the case"* pass into the bankruptcy estate. 11 U.S.C. § 541(a)(1) (emphasis added). Congress intended the sweep of this section to be quite

---

property at a price less than the appraised value may accept such offer and sell the property to the previous owner. Notice shall be provided to the previous owner of the acceptance or rejection of such offer within 15 days after the receipt of such offer.

(5) Rejection of offer to previous owner

(A) Duties of institution

An institution of the System that rejects an offer from the previous owner to purchase the property at a price less than the appraised value may not sell the property to any other person—

(i) at a price equal to, or less than, that offered by the previous owner; or

(ii) on different terms and conditions than those that were extended to the previous owner,

without first affording the previous owner an opportunity to purchase the property at such price or under such terms and conditions.

(B) Notice

Notice of the opportunity in subparagraph (A) shall be provided to the previous owner by certified mail, and the previous owner shall have 15 days in which to submit an offer to purchase the property at such price or under such terms and conditions.

5. To maintain consistency with the statutory parlance, such property, held in FSC's "inventory" pending sale, shall be termed "acquired real estate" in discussion on the federal-law right.

broad. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 206, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515 (1983); *In re Swanson*, 873 F.2d 1121, 1122 (8th Cir.1989); *In re Graham*, 726 F.2d 1268, 1270 (8th Cir. 1984); *In re Schauer*, 62 B.R. 526, 529 (Bankr.D.Minn.1986) *aff'd*, 835 F.2d 1222 (8th Cir.1987). However, "the definition [of property of the estate under § 541(a)] was not designed to enlarge the debtor's rights against others beyond those existing at the commencement of the case." *In re N.S. Garrott & Sons*, 772 F.2d 462, 465–66 (8th Cir.1985). The scope of property rights encompassed by § 541(a) "cannot be expanded where none existed under [non-bankruptcy] law." *California Board of Equalization v. MGM Liquor Warehouse*, 52 B.R. 77, 80 (D.Minn.1985) (quoting *In re Polycorp Assoc., Inc.*, 47 B.R. 671, 673 (Bankr.N.D.Calif.1985)). *See also In re Schauer*, 835 F.2d at 1225.

The question at bar, then, is whether Debtors held a federal-law right of first refusal as of October 26, 1988, the date of their bankruptcy filing. If they did, as the Trustee urges, that right passed into the bankruptcy estate and the estate could properly attempt to recover value on account of it.[6] The structure of § 2219a, its legislative history, and the sparse caselaw construing it, however, support Plaintiff's and Debtors' argument that Debtors' federal-law right of first refusal came into existence *after* their bankruptcy filing. As a post-petition acquisition, then, the right did not and could not pass into the estate.

Section 2219a(a) provides that "[a]gricultural real estate that *is* acquired by" FCS "*shall be* subject to the right of first refusal of the previous owner ..." (emphasis added). The respective tenses of the operative verbs in this language signify that the federal right of first refusal arises and attaches only upon FCS's "acquisition" of the subject real estate. Further evidence for this conclusion is found in the provision of § 2219a(b)(1) that does not even require FCS to notify the farmer-borrower of the existence of the right until after FSC's post-acquisition election to sell. The statute clearly envisions that the farmer-borrower does not gain the right until FCS "acquires" the land through foreclosure, or via deedback from the farmer-borrower.[7]

Under the Minnesota statute governing the foreclosure-by-advertisement procedure used by Plaintiff,

> the [sheriff's] certificate [of sale in foreclosure] shall be recorded within twenty days after such sale, and when so recorded, *upon expiration of the time for redemption*, shall operate as a conveyance to the purchaser ...

MINN.STAT. § 580.12 (emphasis added). The purchaser at the sheriff's sale acquires full title to the foreclosed real estate only upon expiration of the mortgagor's period for redemption from the sale. *Finnegan v. Effertz*, 90 Minn. 114, 116, 95 N.W. 762, 763 (1903); *Lindgren v. Lindgren*, 73 Minn. 90, 99, 75 N.W. 1034, 1036 (1898); *Hokanson v. Gunderson*, 54 Minn. 499, 503, 56 N.W. 172, 173 (1893); *Farmers and*

---

**6.** Plaintiff protests that § 2219a grants the federal-law right only to the "previous owner," defined in § 2219a(a) as "borrower," and that these provisions necessarily exclude a bankruptcy estate as a party eligible to hold or assert the right. The problem with this argument is that, unlike the Minnesota statute, the federal statute does not expressly exclude a bankruptcy estate as a party entitled to hold and assert the right. *Compare* MINN.STAT. § 550.24 subd. 6(b), quoted *infra* at n. 17 and discussed *infra* at p. 1022. Absent such an exclusion, on the face of the more specific statute, there is no expression of Congressional intent that the intentionally-broad provisions of § 541(a) should not govern.

**7.** In *Leckband v. Naylor*, one of the very few published decisions examining the nature of the

§ 2219a right, the court stated that "[t]he right of first refusal established by § 2219a(b) comes into being when the seller first elects to sell the property." 715 F.Supp. at 1453. This does not seem to be entirely accurate. The wording and sequence of the statute would indicate that the farmer-borrower's right of first refusal is first *exercised* when FCS elects to sell acquired real estate, and cannot be exercised before then. However, it *arises* upon the extinguishment of the farmer-borrower's claim of ownership, and continues as something in the nature of an option which may not be exercised until a specific event—FCS's firm decision to sell the subject land. *See Crowell v. Delafield Farmers Mut. Fire Ins. Co.*, 463 N.W.2d 737 (Minn.1990) (analogizing federal-law and Minnesota rights of first refusal of rights under option contract).

*Merchants Bank of Preston v. Junge*, 458 N.W.2d 698, 700 (Minn.App.1990). Before the termination of the mortgagor's redemption rights, the purchaser in foreclosure holds only the right to become the unqualified owner upon expiration of the redemption period, or to receive the amount of its bid, plus interest, in redemption. *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 276 (8th Cir.1983), *cert. den.*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

Here, Debtors filed for Chapter 7 relief on the very last day of their one-year redemption period. Because they did not claim either tract as exempt, 11 U.S.C. § 108(b) [8] operated to extend the redemption period for an additional 60 days, for the benefit of their bankruptcy estate.[9] *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d at 278; *In re Ecklund & Swedlund Devel. Corp.*, 17 B.R. 451, 453 (Bankr.D.Minn.1981). The estate did not redeem the property; thus, on December

26, 1988, FCS received a conveyance of the two tracts. Debtors' right of first refusal did not come into existence until that conveyance was effected.

All of this, of course, was several months after Debtors' bankruptcy filing. With certain very limited statutory exceptions,[10] property acquired by a debtor after a bankruptcy filing does not pass into the bankruptcy estate. The federal-law right of first refusal at issue clearly does not fall within these exceptions; as a result, this right did not become property of Debtors' bankruptcy estate. *Cf. Ackley State Bank v. Thielke*, 920 F.2d 521 (8th Cir.1990) (where, under nonbankruptcy law, debtor did not have a "present vested interest" in funds on deposit in joint bank account with his uncle as of date of bankruptcy filing, those funds did not become property of bankruptcy estate). Plaintiff and Debtors are entitled to a declaratory judgment in their favor on this issue.[11]

---

**8.** In pertinent part, 11 U.S.C. § 108(b) provides:

> (b) ... if applicable nonbankruptcy law ... fixes a period within which the debtor ... may ... cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only ... cure, or perform, as the case may be, before the later of—
>> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>> (2) 60 days after the order for relief [in the bankruptcy case].

**9.** Many counsel appearing in this Court have perpetuated a misunderstanding that the § 108(b) extension generally runs in favor of the debtor in bankruptcy. By specifying the *trustee* as the party who is granted the extension, Congress bespoke its intent that § 108(b) operates to protect and preserve *the bankruptcy estate's* options for realization of value from its property. This necessarily excludes exempt property; the § 108(b) extension does not run in favor of the debtor, at least where the debtor is not armed with the powers and rights of a trustee, as in a Chapter 11 case, pursuant to 11 U.S.C. § 1107(a). The common misunderstanding probably stems from a hasty reading of the statute's text, and an incomplete review of *Johnson v. First Nat'l Bank of Montevideo*—where the debtors, indeed, were in Chapter 11 when the § 108(b) issue was litigated.

**10.** 11 U.S.C. § 541(a) provides that several types of property "acquired" after the commencement

of a bankruptcy estate become property of the estate. These types are described as:

> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
>> (A) by bequest, devise, or inheritance;
>> (B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory of final divorce decree; or
>> (C) as a beneficiary of a life insurance policy or of a death benefit plan.
> (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.
> (7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. § 541(a)(5)–(7).

**11.** The opposite conclusion would be appropriate in the limited situation where a farmer-borrower went into Chapter 7 after FCS's acquisition of foreclosed real estate but before the exercise or extinguishment of the right of first refusal. In such a situation, the right would be in existence as of the commencement of the case, and would become property of the estate like all other "interests in property," tangible or intangible. In the face of the broad sweep of § 541(a), Plaintiff and Debtors cannot succeed in their argument that the federal-law right of first refusal is too "inherently personal" to farm-

## 2. Need FCS First Make a Private Offering to the Farmer–Borrower Under § 2219a(b). Before it May Make a Public Offering Under § 2219a(d)?

As their second question, the parties request a declaration as to the procedure which FCS was required to follow to accord full rights under § 2219a, given FCS's wish to offer the two tracts at a public sale pursuant to 12 U.S.C. § 2219a(d). Section 2219a(d) [12] grants the farmer-borrower the right to match the prevailing bid in any sale "through a public auction, competitive bidding process, or other similar public offering" by FCS. Plaintiff argues that the statute does not require it to make a private offering to the farmer-borrower pursuant to § 2219a(b), before it proceeds under § 2219a(d); it maintains that the farmer-borrower has no more than the rights accorded under § 2219a(d), if it elects to sell acquired real estate via public offering.

Debtors and the Trustee argue to the contrary, citing the District Court's ruling in *Leckband v. Naylor* (Devitt, J.). In *Leckband,* a farmer-borrower sued to obtain a declaratory judgment that he was entitled to a private offering under § 2219a(b) before FCS proceeded with a public sale pursuant to § 2219a(d); he also sought injunctive relief prohibiting FCS from conducting a public sale before affording him the opportunity to purchase at appraised value under § 2219a(b). Addressing the request for declaratory relief, Judge Devitt ruled that the farmer-borrower's

right to first refusal granted by § 2219a(b) exists whether [FCS] decides to sell the property privately or through public auction. The right of first refusal established by § 2219a(b) comes into being when the seller first elects to sell the property. Nothing in that section limits the right to certain types of sales. Nor does § 2219a(d), which establishes a procedure for public sale, state that, in the event the seller elects to sell the property publicly, the right of first refusal established by § 2219a(b) is extinguished or otherwise limited.

715 F.Supp. at 1453. The only Circuit Court of Appeals to address the issue has agreed:

... the language of subsection (b)(1) is quite clear and needs no construction. When the institution "first elects to sell" the property it must follow the procedures set out in the remainder of subsection (b). Accordingly, when the institution "first selects to sell" the property, it must give the previous owner of the property notice of the right of first refusal to purchase the property at appraised value or to make an offer at less than appraised value. This section applies whether the property is to be sold at a private sale or a public auction. The terms of the statute are plain and unambiguous, which should be sufficient to end the discussion ...

*Payne v. Federal Land Bank of Columbia,* 916 F.2d 179, 181 (4th Cir.1990), *rev'g* 711 F.Supp. 851 (W.D.N.C.1989).

---

er-borrowers to become property of the estate. For instance, no one could reasonably dispute that a right of action in damages for bodily injury is "inherently" and intensely "personal to" a plaintiff-debtor, but such a right unquestionably passes into the estate, subject to exemption pursuant to statute. *See, e.g., In re Carlson,* 40 B.R. 746 (Bankr.D.Minn.1984); *In re Bailey,* 84 B.R. 608 (Bankr.D.Minn.1988); *In re Medill,* 119 B.R. 685 (Bankr.D.Minn.1990).

**12.** The full language of the statute is:
  **(d) Public offerings**
    **(1) Notification of previous owner**
    If an institution of the System elects to sell or lease acquired property or a portion thereof through a public auction, competitive bidding process, or other similar public offering, the institution shall notify the previous owner, by certified mail, of the availability of the

property. Such notice shall contain the minimum amount, if any, required to qualify a bid as acceptable to the institution and any terms and conditions to which such sale or lease will be subject.
    **(2) Priority**
    If two or more qualified bids in the same amount are received by the institution under paragraph (1), such bids are the highest received, and one of the qualified bids is offered by the previous owner, the institution shall accept the offer by the previous owner.
    **(3) Nondiscrimination**
    No institution of the System may discriminate against a previous owner in any public auction, competitive bidding process, or other similar public offering of property acquired by the institution from such person.

The rulings in *Leckband* and the Circuit Court opinion in *Payne* take the plain language and structure of the full statute, and give them simple and true effect. As a general rule, the federal courts must give effect to all parts of a statute, if at all possible. *Jarecki v. Searle and Co.*, 367 U.S. 303, 307–08, 81 S.Ct. 1579, 1582–83, 6 L.Ed.2d 859 (1961). If one does this with § 2219a, it is clear that its provisions are intentionally set forth in a rational and meaningful sequence. Congress structured § 2219a by first generally imposing rights of first refusal on FCS acquired real estate. Then, by succeeding subsections, it defined, delineated, and applied those rights to different sorts of situations. Section 2219a(b) clearly applies to *all* sales of acquired real estate, and it goes into effect as soon as FCS "first elects to sell," regardless of the contemplated process of sale. As Debtors' counsel aptly notes, one can *"first"* elect to do something only once. By speaking to the "sale" of acquired real estate only in general terms, and using the word "first," Congress clearly intended the broader right of first refusal to arise as soon as FCS made the simple decision to dispose of acquired real estate, and nothing more.

The wording of § 2219a(b) alone, with the remainder of the statute, is so clear on its face that reference to legislative history is probably unwarranted. That reference, however, shows that the broader congressional intent underlying § 2219a(b) was to establish

a system for notifying previous owners of the opportunity to purchase [acquired real estate] so that, *whether the sale is by auction, contract or otherwise* the previous owner will have an opportunity to buy back or lease back the property. S.REP. No. 230, 100th Cong., 1st Sess. 35 (1987) (emphasis added), quoted and relied upon in *Leckband*, 715 F.Supp. at 1453.[13] This expressed intent is also embodied in the sequence of the statute: after treating the narrower transaction of a lease of acquired real estate in § 2219a(c), Congress then provided additional protection for farmer-borrowers in § 2219a(d), for the situation where FCS elects to conduct a public offering of acquired real estate. This additional protection consists of the ability to repurchase acquired real estate by making a bid to match any third party's qualified bid in a public offering.[14] By speaking to sales by auction in a separate provision, Congress clearly contemplated that FCS might well make a separate, and later, decision as to the mode of sale, some time after it committed to the basic act of divesting itself of the land.

■ Section 2219a(d) lacks any language providing that FCS's election to sell via public offering destroys the farmer-borrower's right under § 2219a(b) to a private offering, or that the right accorded under § 2219a(d) supplants the farmer-borrower's broader right to offer to purchase acquired real estate at a price at or below the appraised fair market value. The legislative history and the plain language clearly contemplate that farmer-borrowers have two successive opportunities to recover foreclosed property if FCS decides to sell at a public sale. Upon electing to sell acquired real estate by *any means*, FCS must first

---

**13.** While the full Senate bill for the 1987 Act was not adopted, the Senate bill's provision for the implementation of the broader right of first refusal was incorporated into the conference bill with only a minor, non-material modification, and became § 2219a(b). HOUSE CONF. REP. NO. 490, 100th Cong. 177–8 (1987). Thus, the Senate report is a fair reflection of Congressional intent.

**14.** In *Leckband,* the court noted in passing that
... § 2219a(d) does not guarantee [the farmer-borrower] an opportunity to match the highest bid at the conclusion of the auction; it merely provides that the seller must sell the property to [the farmer-borrower] in

the unlikely event that the bid he submitted at the auction tied the highest bid.
715 F.Supp. at 1453. While *dicta,* this seems to be unsupported by the language of the statute. By referring to the *several* means of public offering under § 2219a(d)(1), § 2219a(d)(2) clearly contemplates that the farmer-borrower may make a matching "qualified bid" *in the same manner as the otherwise-highest bid is made.* This, then, would seem to allow the farmer-borrower to appear and participate in a "live" auction, by stepping forth to match the final bid after it was made in the ordinary course of the auction. The *Leckband dicta* would seem to apply to a sealed-bid auction, but not to a live auction.

accord the farmer-borrower his rights under § 2219a(b). Only if the farmer-borrower does not exercise § 2219a(b) rights, or if he makes a below-appraisal valuation offer which FCS rejects, may FCS proceed with a public sale. *Martinson v. Federal Land Bank of St. Paul*, 725 F.Supp. 469, 471 (D.N.D.1988). Then, in any such public offering, FCS must afford the farmer-borrower the opportunity to match the prevailing bid.[15]

The plain language of the statute, its legislative history, and all of the extant final court decisions support Debtors' position on this second issue; no published final decision supports Plaintiff's position. While Plaintiff urges this Court to give substantial deference to the Farm Credit Administration regulations set forth at 12 CFR §§ 614.4522(c) and (d),[16] which would compel a result in its favor on this issue, this is not appropriate; the Congressional intent is so clear that the courts have been and are bound to apply § 2219a in accordance with its express terms, notwithstanding the agency's interpretation to the contrary. *Chevron, U.S.A. v. Nat'l Resources Defense Council*, 467 U.S. 837, 842–43 and n. 9, 104 S.Ct. 2778, 2781–82 and n. 9, 81 L.Ed.2d 694 (1984). Defendants, accordingly, are entitled to a declaratory judgment in their favor on this issue.

### C. *MINN.STAT. § 500.24 subd. 6: Minnesota State Law Right of First Refusal.*

In response to the severe downturn in the local agricultural economy which occurred in the early and mid–1980s, the Minnesota State Legislature passed the Omnibus Farm Bill of 1986, Minn.Sess.L. 1986, c. 398. Among other things, the Act amended the prior version of MINN.STAT. § 500.24, the statute regulating the corporate ownership of Minnesota farmland, to add a new subd. 6. Minn.Sess.L.1986, c. 398, art. 20, § 1.

Subd. 6 prescribes certain procedures for the disposition of agricultural lands and farm homesteads by state or federal agencies, limited partnerships, and corporations which acquire such property by mortgage foreclosure or other enforcement of secured rights.[17] It does so "[i]n order to extend to financially-distressed farmers who had lost their farms to corporate lend-

---

**15.** Thus, strictly speaking, the § 2219a(d) right is not a "right of *first* refusal," but a "right of *second* refusal."

**16.** It is not necessary to repeat the lengthy text of these regulations, as all parties acknowledge that they would mandate a different result if applied.

**17.** The relevant statutory text in effect on October 26, 1988, the date of Debtors' bankruptcy filing, is as follows:

(a) A state or federal agency, limited partnership, or a corporation, other than a family farm corporation or an authorized farm corporation, may not lease or sell agricultural land or a farm homestead that was acquired by enforcing a debt against the agricultural land or farm homestead, including foreclosure of a mortgage, accepting a deed in lieu of foreclosure, terminating a contract for deed, or accepting a deed in lieu of terminating a contract for deed, before offering or making a good faith effort to offer the land for sale or lease to the immediately preceding former owner at a price no higher than the highest price offered by a third party that is acceptable to the seller or lessor.... Selling or leasing property to a third party at a price is prima facie evidence that the price is acceptable to the seller or lessor. The seller must provide written notice to the immediate-

ly preceding former owner that the agricultural land or farm homestead will be offered for sale at least 14 days before the agricultural land or farm homestead is offered for sale.

(b) An immediately preceding former owner is the entity with record legal title to the agricultural land or farm homestead before acquisition by the state or federal agency or corporation except: if the immediately preceding former owner is a bankruptcy estate, the debtor in bankruptcy is the immediately preceding former owner; and if the agricultural land or farm homestead was acquired by termination of a contract for deed or deed in lieu of termination of a contract for deed, the immediately preceding former owner is the purchaser under the contract for deed.

.   .   .   .   .

(d) For purposes of this subdivision, the term "a price no higher than the highest price offered by a third party" means the acceptable cash price offered to a third party or the acceptable time-price offer made by a third party. A cash price offer is one that involves simultaneous transfer of title for payment of the entire amount of the offer. If the acceptable offer made by a third party is a time-price offer, the seller or lessor must make the same time-price offer or an equivalent cash

ers an opportunity to repurchase their farms ..." *Harbal v. Federal Land Bank of St. Paul,* 449 N.W.2d 442, 445 (Minn. App.1989), *rev. den.* (Minn. Feb. 21, 1990). As was observed in *Carlson v. Lilyerd,* 449 N.W.2d 185, 189 (Minn.App.1989), *rev. den.* (Minn. March 8, 1990), and in *Travelers Ins. Co. v. Norwest Bank Rochester,* 706 F.Supp. 695, 698 (D.Minn.1989), the legislature added this provision to further serve the general statutory goal:

> ... it is in the interests of the state to encourage and protect the family farm as a basic economic unit, to ensure it as the most socially desirable mode of agricultural production, and to enhance and promote the stability and well-being of rural society in Minnesota and the nuclear family.

MINN.STAT. § 500.24 subd. 1. Again, the parties seek declarations of their respective rights under subd. 6, as those rights lie in the context of Debtors' bankruptcy case.[18]

*1. Who Held or Succeeded to the Minnesota Right of First Refusal, After Debtors Filed for Bankruptcy?*

As their third question, the parties request the Court to identify the party which

held or succeeded to the Minnesota right of first refusal once Debtors filed for bankruptcy.

■ As Plaintiff's counsel aptly notes, the nature of the Minnesota right of first refusal is different from that of the federal-law right. Section 2219a(a) attaches the federal-law right to the subject real estate, in favor of the farmer-borrower who formerly owned it. MINN.STAT. § 500.24 subd. 6 does not purport to create, attach, or affect any interest in the foreclosed land itself; rather, it regulates the seller's [19] post-foreclosure sale or lease of the land, or any other disposition of its contractual or property rights for consideration which a foreclosing creditor may make during the enforcement of those rights.[20] In the ordinary case, the event which triggers the Minnesota right would occur later in the seller's enforcement.[21] The farmer-borrower's options for action are narrower; the farmer-borrower has no rights to demand or to exercise until the seller has received a third-party offer which is acceptable to the seller, and the farmer-borrower has nothing more than the senior right to

offer to the immediately preceding former owner.... A time-price offer is an offer that is financed entirely or partially by the seller and includes an offer to purchase under a contract for deed or mortgage. An equivalent cash offer is not required to be made if the state participates in an offer to a third party through the rural finance authority.

(e) This subdivision applies to a seller when the property is sold and to a lessor each time the property is leased, for five years after the agricultural land is acquired [with three specified exceptions]

. . . . .

This, of course, is the language which governs the present parties' rights. The legislature has amended subd. 6 on at least six occasions since its initial enactment. *See* Minn.Sess.L.1986, 1st Spec.Sess., c. 2, art. 2, § 13; Minn.Sess.L.1987, c. 396, art. 2, § 2; Minn.Sess.L.1987, c. 396, art. 2, § 3; Minn.Sess.L.1988, c. 610, § 8; Minn. Sess.L.1988, c. 700, §§ 1–2; and Minn.Sess.L. 1989, c. 350, art. 16, § 1. However, the basic structure of the underlying rights and the general language of the statute have remained fairly constant.

**18.** For some reason, Debtors' counsel argued that the issue under subd. 6 was not ripe for adjudication, apparently because nothing in the record established that Plaintiff had actually

received a third-party offer which would have triggered the Minnesota right. This argument is without merit. Far from presenting a bar to adjudication, the lack of a third party offer actually mandates judgment in Debtors' favor— as will be seen.

**19.** For the purposes of discussion on subd. 6, the term "seller" will denote the party, formerly a creditor, which wishes to dispose of its post-foreclosure interest in the land.

**20.** The modes of disposition which the statute encompasses are not limited to a conveyance of title for consideration after the expiration of applicable redemption periods; they can include an assignment of rights under a sheriff's certificate of sale before the end of the redemption period. *Harbal v. Fed. Land Bank of St. Paul,* 449 N.W.2d at 447.

**21.** In the wake of *Harbal,* it is unlikely that many purchasers would now elect to purchase rights under a sheriff's certificate as a means of acquiring foreclosed real estate. As the purchasers in *Harbal* found, giving consideration at such an earlier point only adds another possibility for the frustration of the purchaser's goal of acquisition.

purchase the property for the same price, regardless of its current appraised value.

The parties have made a number of alternate arguments going to the main issue. The one which is dispositive, however, is nearly identical to that discussed in connection with the federal-law right: whether the Minnesota right had even come into existence as of the date when Debtors filed for bankruptcy. On this question, the parties' respective positions on the relevant date lead to the same conclusion for the Minnesota right as they did for the federal-law right; if anything, the differences in the nature of the statutory rights only underline the firmness of the conclusion for the Minnesota right.

When Debtors filed for bankruptcy, Plaintiff had not yet received an offer for the purchase of either tract, or for the purchase of its rights under the sheriff's certificate, from a third party, whether acceptable to it or not. It could not have even entered into a contemporaneously-enforceable purchase agreement in the standard sense; it had not yet received a post-foreclosure conveyance of either tract, and thus did not have either title, or a certainty of future acquisition of title, to form the basis for performance under such an agreement. There is nothing in the record to suggest that it had even contemplated selling its rights under the sheriff's certificate; in any event, it had not received a third-party offer for such a sale. Because there was no pending third-party offer as of Debtors' bankruptcy filing, the Minnesota right had not arisen. The right could not attach to the two tracts; thus, it was not carried into the estate with any property right which Debtors held when they went into bankruptcy.

Under the statute, Debtors' Minnesota right of first refusal could come into existence only at a point far along in the process by which Plaintiff was enforcing its rights and realizing their value. This point, whenever it could have been, was long after the instant on which the bankruptcy estate was created. As with the federal right, the Minnesota right does not fall within any of the narrow provisions of

11 U.S.C. §§ 541(a)(5)—(7). It did not become property of Debtors' bankruptcy estate. Plaintiff and Debtors are entitled to a declaratory judgment in their favor on this issue.

### D. Other Issues, Moot or Not Amenable to Decision.

The parties have posed several other questions concerning the Minnesota right of first refusal, separately or as subsidiary issues going to the question just answered. None of these issues need be addressed at length; with one exception, none of them need be decided.

### 1. Vitality of Federal and Minnesota Rights of First Refusal After a Bankruptcy Filing, Regardless of Who Holds Them.

In their stipulation of issues of law, the parties pose the questions:

Subsequent to the filing of a Chapter 7 bankruptcy case, do the provisions of 12 U.S.C. § 2219a have applicability?

and

Subsequent to the filing of a Chapter 7 bankruptcy case, do the provisions of MINN.STAT. § 500.24 subd. 6 have applicability?

Apparently, the point of these interrogatives is that there may be something in the nature of one right or the other that is extinguished by the mere fact of a farmer-borrower's filing for liquidation in bankruptcy, making the right(s) unavailable to all claimants thereto. Plaintiff, as the party with the most to gain from a ruling to this effect, was the most likely proponent of this position; its counsel, however, did not address the issue as such in brief or argument. The proposition is defeated by the fact that neither statute provides on its face that a farmer-borrower's right would be extinguished or made unenforceable, upon his bankruptcy filing. The Minnesota statute, in fact, specifically provides that a farmer-borrower would retain the right against the claims of his bankruptcy estate—so it certainly cannot be said to extinguish the right in the event of a bankruptcy filing. The suggestion that it should be

otherwise for either statutory right is somewhat fatuous; as experience in this Court since 1981 has shown, agricultural failure, farm foreclosure, and Chapter 7 filings have gone hand-in-hand. Absent explicit provision on the face of their enactments, neither Congress nor the Minnesota legislature can be presumed to have intended to bar these remedial measures to persons who otherwise obviously need them, and are qualified to invoke them.

### 2. Constitutionality of Statutory Exception of Bankruptcy Estate from Status of "Immediately Preceding Former Owner" With Right of First Refusal.

The Trustee argues, vigorously if not with consistent precision, that the provision of subd. 6(b) barring a bankruptcy estate from asserting the status of an "immediately preceding former owner" with a right of first refusal is unenforceable under the Supremacy Clause of Art. VI, cl. 2 of the United States Constitution. The question posed is fascinating, if somewhat deeper than suggested by the Trustee in argument.[22] It is unnecessary to rule upon the constitutional issue, however. The

courts have a duty to avoid constitutional adjudication when disputes before them may be resolved on non-constitutional grounds. *Superintendent, Mass. Correctional Institution v. Hill,* 472 U.S. 445, 453, 105 S.Ct. 2768, 2772–73, 86 L.Ed.2d 356 (1985); *Ashwander v. T.V.A.,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Cochenour v. Cochenour,* 888 F.2d 1244, 1245–46 (8th Cir.1989); *Cody v. Hillard,* 830 F.2d 912, 919 (8th Cir.1987) (Lay, C.J., dissenting); *Hedge v. Lyng,* 689 F.Supp. 877, 883–84 (D.Minn.1987). The statutory issue discussed in section III.C. would be dispositive of the parties' dispute, even assuming that the statutory exclusion of the estate was unconstitutional and unenforceable. Thus, the constitutional issue is deferred for decision at another time, and in another case.[23]

### 3. Unenforceability of Statutory Restriction on Assignment of Minnesota Right of First Refusal, under 11 U.S.C. § 541(c)(1).

The Trustee argues at some length that the provisions of 11 U.S.C. § 541(c)(1)[24]

---

**22.** The Trustee rather summarily invokes the Supremacy Clause analysis of *In re McKeag,* 104 B.R. 160 (Bankr.D.Minn.1989) (Dreher, J.), to support his assertion. The violation of the Supremacy Clause which he asserts here is nowhere near as clear-cut as the one Judge Dreher found and invalidated in *McKeag,* however. There, the Minnesota Legislature's purported grant of retroactive effect to the amendment of an exemption law, which was asserted by a debtor in a Chapter 7 case, directly contravened the provision of 11 U.S.C. § 522(b)(2)(A) that the "state or local [exemption] law that is applicable on the date of filing of the [bankruptcy] petition" would govern. Here, the federal legislative preemption of the legal governance of specific subject matter, if any there be, is nowhere near as clear. Subd. 6 does not purport to override § 541(a)(1) by creating rights in farmer-borrowers and then providing that they cannot pass into a bankruptcy estate. Rather, it creates remedial rights in favor of a specified class of parties deemed to be aggrieved; then, it implicitly finds that a bankruptcy estate is not aggrieved in the fashion which the statute is designed to remedy, and does not merit the grant of the rights. The Supremacy Clause violation, if any, is not glaring. The Trustee's argument glosses over these subtleties.

**23.** That other case would appear to be limited to the narrow fact situation involving farmer-borrowers who went into bankruptcy during the brief window period between the tender of a third-party offer to a seller, and the exercise or extinction of the resultant Minnesota right pursuant to the statute. Since it cannot even be said that the Minnesota right "runs with" the underlying real estate or redemption rights, it would be premature for the estate to assert the Minnesota right in a case commenced before the actual making of a third-party offer.

**24.** The relevant provisions of 11 U.S.C. § 541(c) are:

(c)(1) Except as provided in [11 U.S.C. § 541(c)(2)], an interest of the debtor in property becomes property of the estate under [11 U.S.C. § 541](a)(1), (a)(2), or (a)(5) ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under [the Bankruptcy Code], or on the appointment of or taking possession by a trustee in a case under [the

defeat any assertion that the nonassignability provisions of subd. 6(m)[25] bar the bankruptcy estate's claims to the Minnesota right. Again, because this bankruptcy estate could not have succeeded to the Minnesota right springing from Debtors' relationship to Plaintiff, it is not necessary to reach the issue of whether the Trustee has the power to transfer the right for the estate's benefit.

### 4. Viability of Present Conclusions In Case Involving Creditor/Seller's Election to Lease.

As one of their major issues, the parties have requested a ruling on whether the various outcomes on the main issues would be the same, in a case where an acquiring creditor elected to lease inventory real estate after post-foreclosure acquisition, rather than to sell it. They pose this question even though Plaintiff did *not* elect to lease either tract, and apparently never had an intention to do so. By requesting an adjudication on a hypothetical fact situation, the parties are seeking an advisory opinion. The "case and controversy" requirement of Art. III, § 2 of the United States Constitution bars this Court from rendering such a decision. *United Public Workers v. Mitchell,* 330 U.S. 75, 89–91, 67 S.Ct. 556, 564–65, 91 L.Ed. 754 (1947).

### ORDER FOR JUDGMENT

On the basis of the foregoing Findings of Fact and Conclusions of Law,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1. That the right of first refusal under 12 U.S.C. § 2219a(b) and the right to match a prevailing bid for purchase at a public offering under 12 U.S.C. § 2219a(d) which arose from Debtors' pre-petition legal relationship with Plaintiff did not become property of Debtors' bankruptcy estate.

2. That, in any sale of Debtors' two tracts of Waseca County, Minnesota farmland, Plaintiff could have proceeded with a public offering only after affording Debtors their rights of first refusal under 12 U.S.C. § 2219a(b). To the extent that Debtors did not successfully exercise that right, Plaintiff then was required to afford Debtors their right under 12 U.S.C. § 2219a(d) to match the prevailing bid at any such public offering.

3. That the right of first refusal under MINN.STAT. § 500.24 subd. 6 which arose from Debtors' pre-petition legal relationship with Plaintiff did not become property of Debtors' bankruptcy estate.

4. That the Court declines to address the parties' remaining requests for declaratory relief, as moot or as otherwise inappropriate for adjudication on the facts and circumstances presented.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Bankruptcy Code] or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(c)(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under [the Bankruptcy Code].

25. MINN.STAT. § 500.24 subd. 6(m) provides:

(m) The right of an immediately preceding former owner to receive an offer to lease or purchase agricultural land under this subdivision may not be assigned or transferred except as provided in paragraph (*l*), but may be inherited.

Subd. 6(*l*) permits the farmer-borrower's voluntary transfer of the Minnesota right, to extinguish it as part of a conveyance in lieu of foreclosure, or to cure title.