In re Larry **COLEMAN**, Anita Coleman, Wesley W. Coleman, and Vivian Coleman, d/b/a Coleman Ranch, Debtors.

**FARM CREDIT BANK OF SPOKANE, a corporation, Plaintiff,**

v.

Larry **COLEMAN**, Anita Coleman, Wesley W. Coleman, and Vivian Coleman, d/b/a Coleman Ranch, Defendants.

No. 86–20140.
Adv. No. 91–00031.

United States Bankruptcy Court, D. Montana.

March 28, 1991.

Harold V. Dye, Milodragovicyh, Dale & Dye, P.C., Missoula, Mont., for debtors.

W. Arthur Graham, Graham, Reep & Spoon, Missoula, Mont., for Farm Credit Bank.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this adversary proceeding, removed from Montana State District Court, Plaintiff Farm Credit Bank of Spokane (FCB) seeks a declaratory ruling on the right of the Defendants to purchase farm property located in Lake County, Montana. The matter is presently before this Court, after referral from the United States District Court, on Plaintiff's Motion for Summary Judgment, which is opposed by the Defendant on grounds there are material issues of genuine fact to be developed on trial as to the Plaintiff's compliance with the Agricultural Credit Act of 1987. 12 U.S.C. Section 2219a. Both parties have filed briefs in support of their respective positions. After review of each party's Memorandum, and the legal authorities cited by the parties, I determine that the matter is ripe for decision since Defendants are entitled to judgment on undisputed facts as a matter of law.

The background of this proceeding involves confirmation of Defendants' Second Amended Chapter 12 Plan by the Court on May 3, 1988. *See, Coleman v. Farm Credit Bank of Spokane and Bick,* 104 B.R. 338, 7 Mont.B.R. 404 (Bankr.Mont.1989) for the factual details which govern this proceeding. The confirmed Plan was consented to by Plaintiff after extensive legal posturing and negotiations by the parties. As is pertinent to this proceeding, the confirmed Plan provided the Debtor/Defendants would convey certain properties to Plaintiff in partial satisfaction of the FCB debt and amortize the balance over a period of time. Pursuant to the Plan, Colemans conveyed by Quit Claim Deed their right, title and interest in farm property known as the "Bick" place, which Colemans were purchasing under contract for Deed from Bick, and in which property there was an equity of $149,579.00. Plaintiff took possession of the property, and on January 26, 1990, mailed to Colemans a notice of Plaintiff's election to sell the property, together with an in-house appraisal at $200,000.00. The notice was given pursuant to 12 U.S.C. § 2219a(a). Colemans responded by offering to purchase at an amount equal to the unpaid balance due Bick under the Contract for Deed, which approximated $98,837.00. FCB timely rejected the offer. Later in June, 1990, FCB wrote Colemans that the property would be sold after it was more marketable. On September 28, 1990, FCB elected to sell the property by public sale by the method of advertisement for sealed bids. Accordingly, FCB prepared a sales brochure of the property (together with other parcels) and mailed the brochure by certified mail to Colemans. The notice of sale contained the conditions of sale, which, according to the Affidavits supplied by both parties, provided for a minimum bid of $153,000.00 on terms of "cash to underlying contract for deed of approximately $93,200.00." The sale was made subject to the express terms and conditions of the Bick Contract for Deed. The bid date was fixed at November 1, 1990.

On the bid date only one bid was received by Plaintiff and that bid was submitted by the Confederated Salish and Kootenai

Tribes of the Flathead Nation in the sum of $157,691.25. The bid was deemed to have satisfied the terms and conditions of the notice of sale and FCB therefore accepted the bid. All of the public notices sent to Colemans were pursuant to the provision of 12 U.S.C. § 2219a(d), which deals with public offering sales of properties conveyed to FCB by the previous owners, in this instance, Colemans.

On November 6, 1990, Colemans' attorney wrote FCB stating Colemans exercise their right of first refusal to purchase the "Bick" property for the sum of $157,691.25, on the terms of cash to the underlying contract. Colemans thus tendered the sum of $64,491.25 cash to FCB, being the difference between the bid price and the current balance due on the Bick contract. Colemans advised FCB that if the computation of cash was not correct, they would deposit any difference with FCB. That letter precipitated the present lawsuit, which was filed November 19, 1990, whereby FCB seeks judgment that FCB has no obligation to extend a right of first refusal as demanded by Colemans, either under the confirmed Chapter 12 Plan or the Agricultural Credit Act of 1987, 12 U.S.C. § 2219a.

The issue framed by FCB turns on the provision of the confirmed Chapter 12 Plan which provides:

"Debtors shall retain any right of first refusal to the deeded properties that may be provided by Montana law."

The Debtors argue, and FCB disputes, that such provision grants to the Debtors the right of first refusal which they exercised by the letter of November 6, 1990.

At the outset, the Court finds it instructive to review the standards generally applicable to this and any Motion for Summary Judgment. Bankruptcy Rule 7056, incorporating Rule 56(c), Fed.R.Civ.P., states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Electrical Service, Inc., v. Pacific Electrical Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, then the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986).

All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Electrical Service,* 809 F.2d at 630 (citing *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id.*

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *Id.* at 631. Having so stated, the Court now turns to the merits of the pending Motion.

When the Amended Chapter 12 Plan restructuring the FCB debt was consented to by FCB and thereafter confirmed by the Court on May 3, 1988, the provision granting the Defendants any right of first refusal upon sale by FCB of the Bick prop-

erty created a new contract provision between the parties and thereby binds each party. Section 1227 provides in pertinent part that " * * * the provisions of a confirmed plan bind the debtor, each creditor, each equity security holder, and each general partner of the debtor * * * whether or not such creditor, such equity security holder, or such general partner in the debtor has objected to, has accepted, or has rejected the plan." Similar language on the effect of confirmation is contained in § 1141. The law is well-settled on the effect of confirmation as articulated in *In re Holywell Corp.*, 93 B.R. 780, 783 (D.S.D. Fla.1988), which states (discussing a Chapter 11 confirmed Plan):

> "The provisions of a confirmed plan bind all parties whose rights are affected by the plan, regardless of whether they voted to accept it. *In re Sanders*, 81 B.R. 496, 499 (Bankr.W.D.Ark.1987). 'Once the confirmed plan has become consummated, it becomes the law of the case.' *In re Jartran, Inc.*, 76 B.R. 123, 125 (Bankr.N.D.Ill.1987). Further, 'a party in interest ... is bound by the terms of the plan when confirmed, even if the plan ultimately provides it with less than that to which it is otherwise entitled.' *In re St. Louis Freight Lines, Inc.*, 45 B.R. 546, 552 (Bankr.E.D.Mich.1984)."

The parties to the present controversy should surely remember that the "Bick" provision gave rise to another controversy which was decided by this Court in *Coleman v. Farm Credit Bank of Spokane*, supra. I have invited reference to that decision for background of the "Bick" Plan provisions, which are set forth in full in that decision. As is pertinent to the present controversy, this Court held in *Coleman v. Farm Credit Bank*, supra, discussing § 1227:

> "Section 1227 specifically states the provisions of the confirmed Plan bind the parties. The language of *In re Herron*, 60 B.R. 82, 84 (Bankr.W.D.La.1986) is particularly appropriate to the present case.
>
> > 'Once a plan is confirmed, the preconfirmation debt is "replaced" with a new indebtedness as provided in the confirmed plan. The new indebtedness

is in essence a new and binding contract between the Debtor and the creditors. Upon confirmation the Debtor is free to conduct business and, as a consequence, is similarly liable for post-confirmation obligations and conduct.'
It is clear, therefore, each party to the Plan is bound by its provisions." *Id.* at 344.

*Coleman v. Farm Credit Bank*, supra, further teaches that the Order of confirmation is *res judicata*, and any state or common law remedy to the contrary is to be ignored. *Id.* at 345–346. To the same effect is *In re Holywell Corp.*, supra, at 783. Consequently, any provision in state law, such as rights of first refusal accorded under § 25–13–901, et seq., Mont.Code Ann., or the right of first refusal granted under 12 U.S.C. § 2219a(a) or (d) are irrelevant to the present issue because the Debtor's Plan controls.

■ Looking then to the right of first refusal provision of the confirmed Chapter 12 Plan, I find and determine that such provision means exactly what it says, namely, upon sale by FCB of the Bick property, the Defendants are contractually granted the right to have FCB offer the property first to Colemans at the bid price made by the Salish Tribe. I am guided in this interpretation by the language contained in *Tribble v. Reely*, 171 Mont. 201, 557 P.2d 813, 816 (1976), where the court holds:

> "The definition of the right of first refusal or preemptive right has been given by this Court on several occasions beginning with the case of *Weintz v. Bumgarner*, 150 Mont. 306, 313, 434 P.2d 712, 716, wherein we noted the following explanation given in Volume VI, American Law of Property, § 26.64, p. 507:
>
> > ' * * * A pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption, at the stipulated price. Upon receiving such an offer, the pre-emptioner may elect whether he will buy. If he elects not to buy, then the owner of the property may sell to anyone.'

See also *Phalen v. Rilley*, 159 Mont. 239, 496 P.2d 295."

I find and determine that the provision stating "Debtors shall retain *any* right of first refusal to the deeded properties that may be provided by Montana law" is clear and unambiguous, and fits precisely within the common-law definition of pre-empted right set forth in *Tribble v. Reely*, supra. Accordingly, I hold Colemans have the right to purchase the Bick property for the sum of $157,691.25, by payment of cash to FCB of the difference between that bid price and the balance of the Bick contract, together with assumption of all terms and conditions of the Bick contract for deed. This comports with the clear intention of the parties as evidenced by the written contractual Chapter 12 Plan provision set forth above.

IT IS ORDERED judgment shall be entered in favor of the Defendants and against the Plaintiff granting the Defendant the right to purchase the Bick farm property upon the same price, terms, and conditions accepted by the Plaintiff from the Confederated Salish and Kootenai Tribes of the Flathead Nation.