**In re Donald R. BENNETT, Debtor.**

**Donald R. BENNETT and Robert E. Littlefield, Jr., as Chapter 12 Trustee, Plaintiffs,**

**v.**

**GENOA AG CENTER, INC., Richard Sharp, Sandra Sharp, Douglas Van Benschoten, Marjorie Van Benschoten and Farm Credit of Western New York, ACA, Defendants.**

**Bankruptcy No. 91–03017.
Adv. No. 92–60049A.**

United States Bankruptcy Court, N.D. New York.

Aug. 17, 1992.

Hinman, Howard & Kattell, Binghamton, NY, for plaintiffs; M. Elizabeth Bradley, of counsel.

Williamson, Clune & Stevens, Ithaca, NY, for defendants, Genoa Ag Center, Inc., Richard Sharp, Sandra Sharp, Douglas Van Benschoten and Marjorie Van Benschoten; Robert J. Clune, of counsel.

Karpinski, Stapleton & Fandrich, P.C., Auburn, NY, for Farm Credit of Western New York, ACA; Mark H. Fandrich, of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The instant adversary proceeding was commenced on March 6, 1992 by Donald R. Bennett ("Debtor") and Robert E. Littlefield, Jr., Esq., the Chapter 12 Trustee ("Trustee") (collectively the "Plaintiffs) against Genoa Ag Center, Inc. ("Genoa"), Richard and Sandra Sharp ("Sharps"), Douglas and Marjorie Van Benschoten ("Van Benschotens") and Farm Credit of Western New York, ACA ("Farm Credit").[1]

An Amended Adversary Complaint was filed on March 10, 1992. On April 9, 1992, Genoa, the Sharps, and the Van Benschotens filed their joint Answer and demanded

---

**1.** Debtor filed a voluntary petition pursuant to Chapter 12 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") on October 12, 1991.

a jury trial. On April 16, 1992, Farm Credit filed its Answer, but did not demand a jury trial.

On June 2, 1992, Debtor and the Trustee moved for permission to file and serve a Second Amended Complaint, which motion was granted by the Court on June 18, 1992. On July 1, 1992, Farm Credit filed its Answer to the Second Amended Complaint, asserting a counterclaim. On August 10, 1992, Genoa, the Sharps and the Van Benschotens filed their Answer to the Second Amended Complaint.[2]

The Court directed all parties to brief the issue of whether Genoa, the Sharps, and the Van Benschotens are entitled to a jury trial before this Court. All parties filed memoranda of law on this issue.

## FACTS

Rather than reiterate the alleged facts herein, the Court assumes familiarity with its Memorandum–Decision, Findings of Fact, Conclusions of Law and Order dated June 18, 1992. *See In re Bennett*, 142 B.R. 616 (Bankr.N.D.N.Y.1992).

The Second Amended Complaint contains eleven causes of action which may be summarized as follows:

1. Plaintiffs seek a determination that certain obligations owed by the Debtor to Genoa ("the Genoa obligations") are void based on their allegedly usurious interest rates. Accordingly, the Debtor requests a return of all payments made on these obligations.[3]

2. Plaintiffs seek a determination that all payments made on the Genoa obligations are preferences pursuant to Code § 547 and request a return of all such payments pursuant to Code § 550.

3. Plaintiffs seek a determination that all payments made on the Genoa obligations are fraudulent conveyances pursuant to Code § 548 and §§ 273 and 276 of the New York Debtor and Creditor Law ("NYD & CL). Therefore, the Debtor requests the return of all such payments made within six years of the commencement of this case pursuant to Code § 550.

4. Plaintiffs request money damages for alleged tortious interference by Genoa relative to a contract for the sale of certain real property. Plaintiffs seek punitive and consequential damages based on said tortious interference.

5. Plaintiffs seek a determination as against Genoa and Farm Credit that a foreclosure sale relative to certain real property was a fraudulent conveyance under Code § 548 and §§ 273 and 276 of NYD & CL. Debtor further seeks as against Genoa a return of all property sold at that foreclosure sale.

6. Plaintiffs seek a declaration that Debtor's obligation to Farm Credit is void due to the imposition of an interest rate of 18.7% in violation of 12 U.S.C. § 2016 and, therefore, the foreclosure sale was without consideration and, therefore, was both a preference and fraudulent.

7. Plaintiffs seek a determination that had Farm Credit applied the correct rate of interest, the funds from a sale of part of Debtor's property would have cured Debtor's default. Thus, Plaintiffs seek an additional determination that Farm Credit should not have continued with the preferential and fraudulent foreclosure sale.[4]

8. Plaintiffs seek actual and punitive damages against Farm Credit for denying Debtor the right of redemption at the time of the foreclosure sale, in violation of 12 U.S.C. § 2219a.

---

**2.** The Court notes that the Answer to the Second Amended Complaint filed by Genoa, the Sharps and the Van Benschotens does not contain a demand for a jury trial, but the Court does not consider this to constitute a withdrawal of said Defendants' earlier demand.

**3.** By Order dated May 27, 1992, this Court granted Debtor and Trustee's motion for partial summary judgment and determined that the note,

security agreement and mortgage given by the Debtor to Genoa on October 5, 1990 are usurious and void pursuant to New York General Obligations Law §§ 5–501 & 5–511.

**4.** By letter to the Court dated July 20, 1992, Farm Credit asserts that by Stipulation, Debtor has withdrawn the Sixth and Seventh causes of action.

9. Plaintiffs seek treble damages against Genoa, the Sharps and the Van Benschotens for various violations of 18 U.S.C. § 1961, *et seq.* (the "RICO" statute).[5]

10. Plaintiffs request that any adequate protection payments this Court may order Debtor to pay to Genoa be returned upon resolution of this proceeding.

11. Plaintiffs seek damages for breach of contract by Genoa relative to a contract for the sale of certain real property and the reduction and release of specifically identified liens thereon.

Except as noted below, Genoa, the Sharps, and the Van Benschotens have demanded a jury trial for the resolution of all causes of action, excluding the sixth, seventh and eighth, as those claims pertain solely to Farm Credit. Genoa, the Sharps and the Van Benschotens assert that they are entitled to a jury trial because all causes of action asserted against them are either core or consensual non-core and are otherwise appropriate jury issues due to the alleged legal nature of the claims.

Genoa alleges that since it filed a claim against the bankruptcy estate, a jury trial may not be conducted on causes of action two, three and five.[6] In any event, Plaintiffs oppose a jury trial for all causes of action, except the fourth and ninth. Plaintiffs assert that the remaining causes of action are equitable in nature and not appropriate for jury trial.

## DISCUSSION

### A. *Right to a Jury Trial in Bankruptcy Court*

The U.S. Supreme Court has, to date, expressly declined to rule on the constitutionality of a jury trial conducted in bankruptcy court. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 63–65, 109 S.Ct. 2782, 2802, 106 L.Ed.2d 26 (1989). There is, however, a split of authority among the circuit courts of appeal which have addressed the issue.

■ Several circuit courts have held that a bankruptcy court simply does not have the authority to conduct a jury trial. *See, e.g., In re United Missouri Bank of Kansas City, N.A.*, 901 F.2d 1449 (8th Cir.1990); *In re Kaiser Steel Corp.*, 911 F.2d 380 (10th Cir.1990); *In re Baker & Getty Fin. Services, Inc.*, 954 F.2d 1169 (6th Cir.1992); *In re Grabill Corp.*, 967 F.2d 1152 (7th Cir.). In the Second Circuit, however, it has been determined that bankruptcy court jury trials of core proceedings are not unconstitutional where the underlying issue is legal in nature, thus guaranteeing that right pursuant to the seventh Amendment. *See In re Ben Cooper, Inc.*, 896 F.2d 1394, 1403–1404 (2d Cir.1990).

### B. *Core Proceedings*

■ Bankruptcy courts are courts of limited jurisdiction and can only finally determine those categories of cases authorized by statute. *See* 28 U.S.C. § 157(b); *Matter of Majestic Energy Corp.*, 835 F.2d 87, 89 (5th Cir.1988). Where jurisdiction is not so authorized, the court's decisions are without effect. *See id.* Accordingly, before a determination can be made as to whether a jury trial is appropriate in a particular case, it must first be determined whether the bankruptcy court has the appropriate jurisdiction.

■ Congress has provided that "bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 ..." 28 U.S.C. § 157(b)(1). In light of this provision, a bankruptcy court may only enter final orders with respect to core proceedings. *See In re Ben Cooper*, 896 F.2d at 1402–1403. "[A]s a general rule, a matter that arises directly in a bankruptcy case under bankruptcy law is a core proceeding, and a matter that arises under nonbankruptcy law and happens to be of issue in a bank-

---

5. Debtor's original complaint also asserted this cause of action against Farm Credit, but the Second Amended Complaint does not assert the RICO cause of action against Farm Credit.

6. While Genoa contends that it has filed a proof of claim herein, a review of the claims register, through the date hereof, reveals no such claim having been filed.

ruptcy case merely because ... one of the parties to the dispute is a debtor ... usually is not a core proceeding." *In re Sokol,* 60 B.R. 294, 296 (Bankr.N.D.Ill.1986) (citation omitted).

Congress has specifically identified certain types of proceedings as core under 28 U.S.C. § 157(b)(2). That list, however, is not exclusive. *See In re STN Enterprises,* 73 B.R. 470, 478–479 (Bankr.D.Vt.1987). In fact, § 157(b)(2) contains two notoriously broad provisions which are often referred to as "catch all" provisions. *See, e.g., In re Northeast Dairy Cooperative Federation, Inc.,* 72 B.R. 663, 675 (Bankr.N.D.N.Y. 1987). The first, 28 U.S.C. § 157(b)(2)(A), includes as core proceedings all "matters concerning the administration of the estate." The second, 28 U.S.C. § 157(b)(2)(O), identifies "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or equity security holder relationship ..." as core proceedings.

There has, however, been some dispute as to the proper application of 28 U.S.C. § 157(b)(2). While some courts have held that § 157(b)(2) should not be interpreted literally and broadly in light of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), *see, e.g., Matter of Honeycomb, Inc.,* 72 B.R. 371, 373 (Bankr. S.D.N.Y.1987), this Court, relying on the statute's legislative history, has previously adopted a contrary application. *See In re SPI Communications & Marketing, Inc.,* 112 B.R. 507, 510 (Bankr.N.D.N.Y.1990); *rev'd* 114 B.R. 14 (N.D.N.Y.1990).

Significantly, the Court of Appeals for the Second Circuit has agreed that "the legislative history of [§ 157] indicates that Congress intended that 'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits." *In re Ben Cooper,* 896 F.2d at 1398 (citing *In re Arnold Print Works, Inc.,* 815 F.2d 165, 168 (1st Cir.1987)). Additionally, the court *In re Meyertech Corp.,* 831 F.2d 410, 416 (3d Cir.1987), noted that "[i]t is difficult to perceive of a proceeding which would not fall under the all-encompassing language of either § 157(b)(2)(A) or § 157(b)(2)(O)." However, as discussed below, this is not to say there are no limits on the core jurisdiction of the bankruptcy court.

### C. Law–Equity Test

Having generally discussed the significance and scope of core proceedings, an examination of the circumstances necessary for a jury trial is next required. In determining when a matter is appropriate for jury trial, many courts have adopted a law-equity test. *See, e.g., In re Ben Cooper,* 896 F.2d at 1402; *American Universal Insurance Co. v. Pugh,* 821 F.2d 1352, 1355 (9th Cir.1987). This test basically requires an action to be considered legal rather than equitable in nature to proceed as a jury trial. *See id.*

Some courts have declared that core proceedings are inherently equitable proceedings. *See, e.g., In re Honeycomb,* 72 B.R. at 375 (and cases cited). Notwithstanding such generalizations, it has been held that it is more important "to analyze the underlying nature of the claim without regard to Congress' designation of that claim as core." *See In re Ben Cooper,* 896 F.2d at 1401.

Generally, three factors are applied in determining whether the nature of the claim is legal or equitable: 1) the custom with reference to the issue in dispute prior to the merger of law and equity in the federal system, 2) the nature of the remedy sought, and 3) the practical abilities and limitations of juries. *See American Universal Insurance,* 821 F.2d at 1355; *In re Honeycomb,* 72 B.R. at 375.

The third factor, considered the least significant, requires a case by case analysis, but is often a question that is disposed of summarily. *See e.g. In re Honeycomb,* 72 B.R. at 375. Furthermore, the U.S. Supreme Court has noted that it has "never relied on this consideration as an independent basis for extending the right to a jury trial." *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558,

565 n. 4, 110 S.Ct. 1339, 1345 n. 4, 108 L.Ed.2d 519 (1990).

The first factor, pre-merger custom is determined by comparing " 'the [present] action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity.' " *See Granfinanciera,* 492 U.S. at 42, 109 S.Ct. at 2790 (quoting *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987)). It is noteworthy that this factor has been severely criticized as being less than useful. *See, e.g., Chauffeurs,* 494 U.S. at 574–76, 110 S.Ct. at 1350 [Justice Brennan, in a concurring opinion, argues for abandonment of pre-merger custom consideration in law-equity determination].

The second factor, the remedy sought, requires classification of the requested relief as traditionally legal or equitable. *See Granfinanciera,* 492 U.S. at 40–43, 109 S.Ct. at 2790. It is this factor which has been identified as the "more important" consideration. *See id.* In *Granfinanciera,* the Court found it significant, for purposes of characterizing an action as legal, that a litigant sought as its *sole* form of relief the recovery of a money judgment, a form of relief traditionally offered in courts of law. *See id.* 492 U.S. at 46–48, 109 S.Ct. at 2793.

However, the U.S. Supreme Court has also indicated that an award of monetary relief need not necessarily constitute legal relief. *See Chauffeurs,* 494 U.S. at 568–70, 110 S.Ct. at 1347 (citing *Curtis v. Loether,* 415 U.S. 189, 195–97, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974)). "For example, where a cause of action seeking monetary relief is integral to the equitable relief sought, such as the imposition of a constructive trust ... the action lies in equity with no right of jury trial." *American Universal Ins. Co.,* 821 F.2d at 1356 (quoting *Matter of Paula Saker & Co.,* 37 B.R. 802, 808 (Bankr.S.D.N.Y.1984)). Additionally, damages have been characterized as equitable relief where they are restitutional in nature, such as, in actions for disgorgement of improper profits. *See Chauffeurs,* 494 U.S. at 570–72, 110 S.Ct. at 1348.

### D. Effect of Filing Claims Against the Estate

There is little question that once a claim is filed against the bankruptcy estate, the right to a jury trial on that issue is waived. *See Granfinanciera,* 492 U.S. at 58–59, 109 S.Ct. at 2799; *Langenkamp v. Culp,* 498 U.S. 42, 43–45, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990). Such a waiver is based upon the notion that by filing a claim, the claimant voluntarily submits itself to the equitable jurisdiction of the bankruptcy court. *See id.*

Defendant, Genoa has recognized this fact, and having allegedly filed a claim against the estate, has not asserted a right to a jury trial for causes of action two, three and five. However, the remaining defendants, excepting Farm Credit, have not filed proofs of claim, and assert a right to a jury trial on all causes of action.

### E. Analysis of Specific Causes of Action

Each of the Plaintiff's causes of action, excluding causes of action six through eight, are examined below to determine, 1) if the action is core or non-core, 2) if the action is legal or equitable, and 3) whether a jury trial is appropriate in this Court. As to causes of action six through eight, the Court will simply apply the core versus non-core analysis.

#### 1. First Cause of Action

Plaintiffs' first cause of action is for a determination that certain obligations owed to Genoa are void due to a usurious interest rate. The Debtor seeks the return of all payments made on these obligations.

██ This action may properly be characterized as core, under 28 U.S.C. § 157(b)(2)(O), as it seeks an adjustment of the debtor-creditor relationship in a most fundamental way. Any action to void an obligation between a debtor and a creditor certainly must amount to an adjustment of their relationship, as such an action goes to the very existence of the relationship. More significantly, in *Matter of Shell Materials, Inc.,* 50 B.R. 44, 46 (Bankr.

M.D.Fla.1985), an action was deemed core where a debtor sought a determination that certain notes and other obligations were invalid and unenforceable due to an alleged violation of a state statute. Therefore, this action, based on New York State interest and usury law, must be core.

■ The first cause of action is also legal in nature. As stated in *In re Ben Cooper, Inc.*, 896 F.2d at 1402, it is usually the nature of the underlying dispute which determines the right to a jury trial. The underlying dispute in this action arises exclusively out of New York State interest and usury statutes, the remedy for which is completely available at law in the form of monetary relief. Significantly, it has been held that whether a usurious rate of interest was exacted can be a question for the jury. *See Martin v. Slifkin*, 249 A.D. 860, 293 N.Y.S. 213 (1937). Furthermore, no equitable remedy has been requested or is appropriate in this action.

As the first cause of action is a core matter and legal in nature, it may be resolved in this Court by means of a jury trial.[7]

## 2. Second Cause of Action

■ The second cause of action is for the recovery of payments made by the Debtor on the Genoa obligations on the basis that such payments constitute preferential transfers pursuant to Code § 547. It has been held that "a preference action under § 547 of the Code ... is inextricably tied to the creation of the estate in bankruptcy ... [and] there would be no cause of action without the federal bankruptcy statutes that authorize it." *Matter of Paula Saker & Co., Inc.*, 37 B.R. at 811 (quoting *In re Kaiser*, 722 F.2d 1574, 1581 (2d Cir. 1983)). Moreover, 28 U.S.C. § 157(b)(2)(F) specifically identifies proceedings involving the determination and recovery of preferences as core proceedings. Therefore, it is clear that the second cause of action falls within the core jurisdiction of this Court.

■ Turning to the nature of this claim, "there is no dispute that actions to recover preferential or fraudulent transfers were often brought at law in late 18th century England." *Granfinanciera*, 492 U.S. at 43, 109 S.Ct. at 2790–91. An excerpt from the decision in *Matter of Paula Saker & Co., Inc.*, 37 B.R. at 807–808, discussing *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932), sheds additional light on the historical treatment of preference actions as legal or equitable:

> Noting the long established English practice of permitting actions at law in trover and for money had and received for recovery of preferential transfers by bankrupts, the Court [in *Schoenthal* ] held that a properly demanded jury trial was required [in a preference action]. *Schoenthal* was construed broadly for at least twenty years, so much so, that in *Chichester v. Kramer*, 157 F.Supp. 79 (S.D.N.Y.1957), the court opined that a preference action to recover money or property was presumed to be legal in character. *See* 157 F.Supp. at 81 and cases cited thereat.
>
> That presumption, however, has not survived the decisions in *Beacon Theatres* [*v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988], *Dairy Queen* [*v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44], and *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). Those cases require the courts, in determining whether a claim is legal or equitable and hence whether there is a cognizable right to a jury trial, not to accept the theory pleaded but to look to the facts to determine if a decree in equity is required.

> • • • • •

> Notwithstanding the restorative nature of a preference or fraudulent conveyance action, the courts, in the main, have employed reasoning similar to that noted above, finding a right to a jury trial when the complaint pleads merely the receipt of money in violation of the Bankruptcy Code [citation omitted]. But

---

7. Based upon this Court's May 27, 1992 Order, it appears that the only issue upon which this cause of action will proceed to trial is the amount of payments received by Genoa pursuant to the obligations.

where a cause of action seeking monetary relief is integral to the equitable relief sought, such as the ... reconveyance of property, *Senchal v. Carroll*, 394 F.2d 797 (10th Cir.1968), the action lies in equity with no right of jury trial.

37 B.R. at 807–808.

The instant preference action involves no request for equitable relief and, as a request solely for monetary relief, appears to be legal in nature. Significantly, the Court in *Granfinanciera*, 492 U.S. at 48–50, 109 S.Ct. at 2794, indicated that where a preference action seeks only money payments without otherwise requesting any type of equitable relief, the action is legal in nature and a right to a jury trial exists.

As the second cause of action is a core proceeding and legal in nature, a jury trial in this Court is appropriate.

### 3. Third Cause of Action

The third cause of action is for recovery of payments made by the Debtor on the Genoa obligations on the basis that such payments constitute fraudulent conveyances pursuant to Code § 548.

■■■ 28 U.S.C. § 157(b)(2)(H) explicitly provides that actions to recover fraudulent conveyances are core proceedings. *See also In re Ben Cooper, Inc.*, 896 F.2d at 1400 (stating that fraudulent conveyance actions are core proceedings). Accordingly, there is little doubt that the third cause of action is a core matter.

Relative to the nature of this claim, the Court in *Granfinanciera* placed credence in the following passage explaining the law-equity dichotomy in the context of fraudulent conveyances:

"If the subject matter is a chattel, and is still in the grantee's possession, an action in trover or replevin would be the trustee's remedy [in 18th century courts]; and if the fraudulent transfer was of cash, the trustee's action would be for money had and received. Such actions at law are as available to the trustee today as they were in the English courts of long ago. If, on the other hand, the subject matter is land or an intangible, or the

trustee needs equitable aid for an accounting or the like, he may invoke the equitable process, and that also is beyond dispute." 1 G. Glenn, Fraudulent Conveyances and Preferences and Preferences § 98, pp./183–184 (rev. ed. 1940).

492 U.S. at 44, 109 S.Ct. at 2791 (citing 1 G. Glenn, Fraudulent Conveyances and Preferences § 98, pp./183–184 (rev. ed. 1940)).

■■■ The alleged fraudulent conveyances in this claim involve cash and seeks only the recovery of such cash payments. In light of the above passage and the discussion of the remedy of monetary relief set forth in the analysis of the second cause of action, this action appears to be legal in nature. More importantly, the Court in *Granfinanciera*, 492 U.S. at 48–50, 109 S.Ct. at 2794, identified fraudulent conveyances of this type as legal in nature. Since this claim is also a core matter, a jury trial in this Court is appropriate.

### 4. Fourth Cause of Action

■■■ The fourth cause of actions seeks money damages, including punitive damages, for the tortious interference by Genoa relative to certain contracts for the sale of real estate. Interestingly, in *In re Marketing Resources International Corp.*, 43 B.R. 71 (Bankr.E.D.Pa.1984), a tortious interference claim was found to be a core proceeding. However, that determination turned on the fact that a claim was filed against the estate which brought the matter under the bankruptcy court's jurisdiction. In the absence of the filing of such a claim, it would seem that an action for tortious interference, not arising under bankruptcy law, is no more than tangentially related to the bankruptcy process and cannot be considered a core matter.

■■■ It has been held that it is not enough to deem this action core merely because a favorable judgment will increase the assets available to the estate. *See In re R.I. Lithograph Corp.*, 60 B.R. 199, 203–204 (Bankr.D.R.I.1986). Additionally, related proceedings do not become core proceedings solely by virtue of the fact that they arise out of the same transaction or occurrence as core proceedings. *See In*

*re Martin Specialty Vehicles, Inc.*, 71 B.R. 221, 225 (Bankr.D.Minn.1987). In the present case, there appears to be no other connection to the bankruptcy process sufficient to deem this action a core proceeding.

Furthermore, it has been held that where an action has a "life of its own in either state or federal common law or statute independent of federal bankruptcy laws," it is not a core proceeding. *See In re Marine Pollution Service, Inc.*, 88 B.R. 588, 596 (Bankr.S.D.N.Y.1988) (citing *In re Kaiser*, 722 F.2d at 1582), *rev'd* on other grounds, 857 F.2d 91. The fourth cause of action arose before this bankruptcy proceeding was commenced and would have continued on had there been no bankruptcy. The issue is only before this Court because the allegations were made by an individual who happened to be a debtor. Accordingly, this matter must be deemed non-core.

■ This cause of action, however, does seem to be legal in nature. A cause of action for tortious interference has been described as "analogous to certain causes of action that were brought in courts of law in the 18th century." *In re Jensen*, 946 F.2d 369, 371 (5th Cir.1991). Moreover, the U.S. Supreme Court has stated that punitive damages, as sought here, is a remedy traditionally offered in courts of law. *See Curtis v. Loether*, 415 U.S. at 196, 94 S.Ct. at 1009.

A jury trial is therefore appropriate for this legal claim. However, because this action is non-core, such a trial may not be held in this Court.

### 5. Fifth Cause of Action

In the fifth cause of action the Debtor seeks a determination that the Farm Credit foreclosure sale relative to certain real property constituted a fraudulent conveyance under Code § 548. The Debtor seeks a return by Genoa of all property sold at that foreclosure sale.[8]

■ This cause of action, like the third, is a core proceeding under 28 U.S.C.

§ 157(b)(2)(H), which specifically identifies actions to determine and recover fraudulent conveyances as core proceedings.

■ Although the same general analysis applies to this action as to the third cause of action, it is not clear that this is a legal claim because the relief sought involves the reconveyance of real property to the estate. As stated above, "where the cause of action seeking monetary relief is integral to the equitable relief sought, such as the … reconveyance of property … the action lies in equity with no right of jury trial." *See Matter of Paula Saker & Co., Inc.*, 37 B.R. at 807–808.

In this action, the only relief sought is the reconveyance of property which, as supported by the above statement, is an equitable form of relief. As previously noted, it is the form of relief that is most significant to the law-equity determination, not merely the theory pleaded. *See Matter of Saker*, 37 B.R. at 807–808.

Furthermore, the Debtor points out that this claim basically seeks a rescission of the foreclosure sale and a reconveyance of the property based on the fraudulent conduct of the Defendants. (*See* Plaintiff's Memorandum of Law, p. 3). It has been held that "claims grounded in fraud are not distinctively legal or equitable, and thus 'the jury right turns on the remedy sought and the context in which the claim of fraud arises.'" *In re Friedberg*, 131 B.R. 6, 12 (Bankr.S.D.N.Y.1991) (quoting Wright & Miller FEDERAL PRACTICE AND PROCEDURE § 2311). The Debtor further cites the Wright and Miller commentary as stating that "especially in situations when the claimant only can be made whole by the reconveyance of real estate … the claim for rescission is equitable and there is no right to a jury."

The Court thus concludes that the fifth cause of action, while a core matter, is equitable in nature and inappropriate for jury trial.

---

**8.** While this cause of action seeks relief which impacts on both Farm Credit and Genoa, the Court considers it to be focused primarily upon setting aside the foreclosure sale and recovery of the property from Genoa.

### 6. Sixth Cause of Action

In the sixth cause of action the Debtor and the Trustee seek a declaration that an obligation owed to Farm Credit by the Debtor is void due to an allegedly improper and illegal rate of interest under 12 U.S.C. § 2016.

 This claim is very similar to the first cause of action which also seeks a determination that certain obligations are void due to an excessive interest rate. The primary difference between the two causes of action is that while the first cause of action is based on New York State law, this action is based on federal law. However, it is generally accepted that "the fact that a claim in a bankruptcy matter raises issues of state, rather than federal, law does not by itself determine that it is non-core, rather than core." *In re Arnold Print Works*, 815 F.2d 165, 169 (1st Cir.1987); *See also In re MEC Steel Buildings, Inc.*, 136 B.R. 606 (Bankr.D.Puerto Rico 1992); *Bayless v. Crabtree Through Adams*, 108 B.R. 299, 303 (state law content of proceeding is not determinative of core/non-core status.) More importantly, the court in *Arnold Print Works* indicated that it is the relation of the proceeding to the bankruptcy process which determines the character of the proceeding, rather than the state or federal basis for the claim. 815 F.2d at 169.

In light of the foregoing, the sixth cause of action can be analogized to the case of *In re Shell Materials, Inc.*, 50 B.R. 44, 46 (Bankr.M.D.Fla.1985) where a debtor's claim that certain notes and other obligations were invalid and unenforceable was held to be core. This determination was made, at least in part, because such a claim was found to concern the administration of the estate. *See id.* at 46. In light of *Arnold Print Works*, the mere fact that the invalidation of obligations sought in the present cause of action is based on federal law rather than on state law, as was the case in *Shell Materials*, does not make such an analogy inappropriate.

It can also be seen that the sixth cause of action falls under 28 U.S.C. § 157(b)(2)(O) as an adjustment of the debt-or-creditor relationship. Certainly, it is clear that any action to void a debt between a debtor and a creditor goes to the very heart of their relationship. It is also interesting to note that in *In re Caudill*, 82 B.R. 969 (Bankr.S.D.Ind.1988), core jurisdiction was found under 28 U.S.C. § 157(b)(2)(A) and (L) where the issue requiring determination involved the interest rate payable on certain obligations subject to 12 U.S.C. § 2015. *See id.* However, that case is distinguishable as it involved the setting of interest rates by the court for purposes of confirming a Chapter 12 plan of reorganization, which is clearly a core matter under 28 U.S.C. § 157(b)(2)(L).

Based on the foregoing, the sixth cause of action falls within the core jurisdiction of this Court.

### 7. Seventh Cause of Action

 The seventh cause of action claims that Farm Credit had no basis to continue with a foreclosure sale relative to certain property of the Debtor. The Debtor and Trustee assert that the foreclosure sale amounted to a preferential transfer and a fraudulent conveyance pursuant to 11 U.S.C. §§ 547 and 548, and seek a return of the property under 11 U.S.C. § 550.

This cause of action involves matters which are inextricably tied to the bankruptcy process under 11 U.S.C. §§ 547 (preferential transfers), 548 (fraudulent conveyances), and 550 (recovery of property). Accordingly, it is clearly a core proceeding under 28 U.S.C. § 157(b)(2)(F), (H), and (A), which specifically provide that such matters are core. In this respect the seventh cause of action is similar to causes of action two (a preferential transfer), three (a fraudulent conveyance), and five (a fraudulent conveyance) which are also core. Reference to the discussion of those causes of action (and cases cited therein) will lend further support to the conclusion that this claim is core.

### 8. Eighth Cause of Action

 In the eighth cause of action, the Debtor and the Trustee seek actual and

punitive damages against Farm Credit based on Farm Credit's alleged willful and malicious denial of the Debtor's right of first refusal, under 12 U.S.C. § 2219a, relative to property which was the subject of the foreclosure sale. Interestingly, an issue involving the right of first refusal was decided by a bankruptcy court in the case of *In re Coleman,* 125 B.R. 621 (Bankr. D.Mont.1991). However, while it is true that it is the nature of the claim which determines whether a matter is core, *see In re Arnold Print Works,* 815 F.2d at 169, the *Coleman* case is distinguishable because the case involved the right of first refusal, not under 12 U.S.C. § 2219a, but rather under a specific provision of a confirmed plan, which is clearly a core matter under § 157(b)(2)(A) and (L).

More significantly, the bankruptcy court in *In re Solberg,* 125 B.R. 1010 (Bankr. D.Minn.1991), entered an order on an issue, the basis of which was the right of first refusal under 12 U.S.C. § 2219a. The court in *Solberg* held that a bank which sought to sell foreclosed-upon property at public auction was first required to make a private offering to the farmer-borrower who held a federal statutory right of first refusal under § 2219a. *See id.* at 1018–19. The court also held that the bank had to afford the farmer an opportunity to match the prevailing bid at public auction. *See id.*

In light of the above discussion, it appears that a cause of action based on 12 U.S.C. § 2219a, as is the eighth cause of action, is a core matter upon which this court may enter a final order.

### 9. Ninth Cause of Action

The ninth cause of action seeks treble damages against Genoa, the Sharps and the Van Benschotens for the violation of various provisions of the RICO statute. (18 U.S.C. § 1961 *et seq.*). Despite the broad construction given to core matters, this cause of action must be deemed noncore. Referring largely to the analysis of core proceedings set forth in the analysis of the fourth cause of action, this action cannot be deemed core simply because it

may increase the assets of the estate, *see In re Lithograph,* 60 B.R. at 203–204, or because it arises out of the same events as does a core matter, *see In re Martin,* 71 B.R. at 225. Additionally, this action arose before the filing of the petition in this bankruptcy and would exist independently outside the bankruptcy process. It is therefore not a core proceeding. *See Barnett v. Stern,* 909 F.2d 973 (7th Cir.1990); *Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183 (5th Cir.1990).

The ninth cause of action does, however, set forth a legal claim for which a jury trial is appropriate. Such action is based on federal legislation sounding, at least in part, in tort. As tort actions are generally thought to be legal in nature, *see In re SPI Communications & Marketing, Inc.,* 112 B.R. at 512, so is the Plaintiff's ninth cause of action. More significantly, it has been held that an action seeking treble damages for persons injured by violations of the RICO statute is legal in nature and, therefore, a jury trial is required for such action. *See NSC International Corporation v. Ryan,* 531 F.Supp. 362, 363 (N.D.Ill.1981).

In light of the foregoing analysis, a jury trial is appropriate for the ninth cause of action. However, because the claim is noncore, the bankruptcy court has no jurisdiction over this proceeding and cannot conduct the trial.

### 10. Tenth Cause of Action

In the tenth cause of action the Debtor and Trustee request repayment of any amounts the Court might require Debtor to make as adequate protection payments to Genoa. Such a request is a core matter as it arises solely out of the bankruptcy process. In the absence of the bankruptcy proceeding, there would clearly be no such cause of action. This action seems to fall under 28 U.S.C. § 157(b)(2)(O), as a proceeding that affects the debtor-creditor relationship.

Since this claim is basically for declaratory relief, which is inherently neither legal nor equitable, it is necessary to exam-

ine the nature of the underlying dispute to make the law-equity determination. *See In re Ben Cooper, Inc.*, 896 F.2d at 1402; *In re Petition of Rosenman & Colin*, 850 F.2d 57, 60 (2d Cir.1988). This is a simple matter. A request for repayment of adequate protection payments turns entirely upon the power of the bankruptcy court to fashion such equitable relief. Accordingly, this cause of action must be characterized as equitable in nature, precluding the right to resolution by a jury.

### 11. Eleventh Cause of Action

The eleventh cause of action is a breach of contract action involving the alleged failure of Genoa to comply with a contract for the sale of real property and the release of certain liens thereon. The Debtor seeks only money damages. Although some might argue that this claim falls under 28 U.S.C. § 157(b)(2)(E) and/or (O), a breach of contract action of this type has been determined to be a non-core matter in view of *Marathon*. *See In re Illinois–California Express, Inc.*, 50 B.R. 232, 237 (Bankr. D.Col.1985); *In re Pierce*, 44 B.R. 601, 602 (Bankr.D.Col.1984). This is not to say that a matter is non-core simply because it arises out of state law.

■ This proceeding does not arise out of the bankruptcy law and is only peripherally related to the bankruptcy process. Additionally, there appears to be no sufficient connection to the bankruptcy estate which would justify classifying this action as core. (The fourth and ninth causes of action are similar in this regard, and additional support for this conclusion is set forth in those discussions.)

■ The eleventh cause of action is, however, properly characterized as legal in nature. It has been held that a breach of contract claim is a legal action entitled to a jury trial. *See In re Tastee Donuts*, 137 B.R. 204, 206 (E.D.La.1992); *Seaboard Lumber Co. W.T. v. United States*, 903 F.2d 1560, 1563 (Fed.Cir.1990). Additionally, as previously stated, monetary relief has traditionally been viewed as a form of relief offered by courts of law, especially where it is the only relief sought. *See*

*Chauffeurs*, 494 U.S. at 568–70, 110 S.Ct. at 1347 (also stating, however, that such relief may not necessarily be determinative).

The eleventh cause of action is legal in nature, and a jury trial may be held on the matter. However, because the matter is non-core, the bankruptcy court is not the proper forum for such a trial.

### F. Consent to Bankruptcy Court Jurisdiction

■ Genoa, the Sharps and the Van Benschotens appear to have consented to permit this Court to enter a final order in all noncore matters. The Debtor, The Trustee and Farm Credit have not expressly consented to submit to the bankruptcy court's jurisdiction on such matters. However, Genoa, the Sharps and the Van Benschotens maintain that the Debtor and Trustee have impliedly given such consent by commencing this adversary proceeding.

In *In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1138 (2d Cir.1987), it was held that implied consent may exist where there is a failure to object to the jurisdiction of the bankruptcy court. However, that case involved a failure to object after the case had been heard and an appeal had been taken. Importantly, the Second Circuit noted that consent to bankruptcy court jurisdiction should not be inferred lightly. *See id.*

Furthermore, Federal Rule of Bankruptcy Procedure ("Fed.R.Bankr.P.") Rule 7012(b), as amended in August of 1987, states that, "in non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the *express* consent of the parties." (emphasis added). *See also* Advisory Committee Note to 1987 Amendment to Bankruptcy Rule 7012, ("A final order of judgment may not be entered in a non-core proceeding heard by a bankruptcy judge unless all parties expressly consent."). It is significant that the court in *Men's Sportswear* supported its conclusion with pre–1987 amendment cases and did not make any mention of the amended Rule

7012(b). *See In re Men's Sportswear,* 834 F.2d at 1138.

In light of the foregoing, present law seems to mandate that parties must expressly consent to the entry of a final order by the bankruptcy court in the determination of non-core matters. Since the Debtor, the Trustee and Farm Credit have not given their express consent, this proceeding presently involves no consensual, non-core matters which may be determined by this Court at jury trial.

### CONCLUSION

1. The first, second and third causes of action are core matters which are legal in nature. Therefore, a jury trial may be had in this Court to finally resolve those issues.

2. The fifth and tenth causes of action, while core matters, are equitable in nature. Accordingly, no right to a jury extends to those claims.

3. The fourth, ninth and eleventh causes of action are all legal actions, but are non-core matters. Accordingly, no jury trial may be had on those actions in this Court, absent the express consent of all of the parties pursuant to Fed.R.Bankr.P. 7012(b).

4. The sixth, seventh and eighth causes of action are core matters, however, no jury trial has been demanded.

5. While the Defendants have allegedly consented to the resolution of all non-core claims by this Court, the Debtor, the Trustee and Farm Credit have not. Therefore, the Court will require the express written consent of all of the parties to this Court's entry of a final order on the fourth, ninth and eleventh causes of action herein said written consent to be filed with the Clerk of this Court on or before September 4, 1992.

IT IS SO ORDERED.